**Michael A. SCHOOLING, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 04–996C.**

United States Court of Federal Claims.

Nov. 30, 2004.

Michael Schooling, pro se, plaintiff.

Roger A. Hipp, Washington, D.C., for defendant, United States Department of Justice.

## MEMORANDUM OPINION AND ORDER

BRADEN, Judge.

## RELEVANT FACTS AND PROCEDURAL BACKGROUND [1]

*Pro se* plaintiff Michael Schooling is a retired Internal Revenue Service Revenue ("I.R.S.") employee formerly assigned to SB/SE Compliance, Area 14, in San Diego, California. *See* Compl. Ex. 2 at 3. As a result of alleged disciplinary violations, the I.R.S. sought to suspend plaintiff from duty and pay for 30 days. *See* Def.App. at 3. On April 30, 2003, plaintiff, the I.R.S., and the National Treasury Employee's Union entered into a settlement concerning the scope of disciplinary action to be taken against plaintiff. *See* Compl. Ex. 2. The settlement provided that "the [I.R.S.] will issue a decision regarding the proposed adverse action issued on December 2, 2002, sustaining the charges, but will agree to mitigate the proposed thirty . . . day suspension to a fourteen

---

1. The relevant facts recited herein were derived from the following portions of the record: Plaintiff's June 14, 2004 Complaint ("Compl."); Exhibits to Plaintiff's June 14, 2004 Complaint ("Compl.Ex.") Defendant's September 10, 2004 Motion to Dismiss ("Gov't Mot. to Dismiss");

Appendix to Defendant's September 10, 2004 Motion to Dismiss ("Def.App."); and Plaintiff's September 24, 2004 Response to Defendant's September 10, 2004 Motion to Dismiss ("Pl. Resp.").

... day suspension, to commence on June 12, 2003, with a return to duty of June 26, 2003." Compl. Ex. 2 at 3. The settlement also provided that plaintiff would retire at the end of the suspension. *Id.* Both plaintiff and the I.R.S. substantially complied with the terms of the agreement: the I.R.S. mitigated the suspension to 14 days and plaintiff retired after serving the suspension. *See* Compl. ¶ 1.

On June 14, 2004, plaintiff filed a Complaint in the United States Court of Federal Claims, claiming that the I.R.S. materially breached the settlement by failing to issue a decision letter, as required by Section 7503(b)(4) of the Civil Service Reform Act of 1978 ("CSRA").[2] On September 10, 2004, defendant (the "Government") filed a Motion to Dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1). On September 24, 2004, plaintiff filed a response.

## DISCUSSION

### A. Jurisdiction.

The United States Court of Federal Claims is authorized, under the Tucker Act, 28 U.S.C. § 1491(a)(1), to render judgment and money damages on any claim against the United States based on the United States Constitution, an Act of Congress, a regulation of an executive department, or an express or implied contract with the United States. *See United States v. Testan,* 424 U.S. 392, 397–98, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). The United States Supreme Court has clarified that the Tucker Act does not create any substantive right for monetary damages. *See United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980) (*"Mitchell I"*). Instead, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages for the court to have jurisdiction. *See Khan v. United States,* 201 F.3d 1375, 1377 (Fed.Cir.2000).

### B. The Pleading Requirements For *Pro Se* Plaintiff.

Traditionally, a *pro se* plaintiff's pleadings have been held to a less stringent standard than a litigant represented by counsel. *See Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980). Indeed, it has long been the traditional role of this court to examine the record "to see if [a *pro se*] plaintiff has a cause of action somewhere displayed." *Ruderer v. United States,* 188 Ct.Cl. 456, 468, 412 F.2d 1285 (1969).

### C. Standard Of Review.

Rule 12(b)(1) of the Rules of the United States Court of Federal Claims governs dismissal of a claim for lack of subject matter jurisdiction. *See* RCFC 12(b)(1). In ruling on a Rule 12(b)(1) motion to dismiss, the court is generally "obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor." *See Henke v. United States,* 60 F.3d 795, 797 (Fed.Cir.1995) (citing *Scheuer v. Rhodes,* 416 U.S. 232, 236–37, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Plaintiff, as the non-moving party, however, bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988) ("[O]nce the [trial] court's subject matter jurisdiction was put in question it [is] incumbent upon [plaintiff] to come forward with evidence establishing the court's jurisdiction.").

### D. The United States Court of Federal Claims Does Not Have Jurisdiction to Adjudicate Plaintiff's Claims In This Case.

#### 1. Plaintiff Is A Federal Employee Covered By The Civil Service Reform Act.

The Government argues that "the Court of Federal Claims lacks jurisdiction to consider challenges to adverse personnel decisions such as the one at issue here" because plaintiff is a federal employee covered by the

---

**2.** Section 7503(b)(4) of the CSRA provides that "[a]n employee against whom a suspension for 14 days or less is proposed is entitled to ... a written decision and the specific reasons therefor at the earliest practicable date." 5 U.S.C. § 7503(b)(4).

CSRA. *See* Gov't Mot. to Dismiss at 5. Congress provided for judicial review of employee suspensions under the CSRA through the Merit Systems Protection Board ("MSPB"), final decisions of which may be appealed to the United States Court of Appeals for the Federal Circuit. *See* 5 U.S.C. § 7703(b)(1);[3] *see also* Gov't Mot. to Dismiss at 5 (citing *United States v. Fausto*, 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988); *Read v. United States*, 254 F.3d 1064 (Fed.Cir.2001)). The authorities cited by the Government bear close scrutiny.

In *Fausto*, the plaintiff was an employee of the Fish and Wildlife Service ("FWS") who was terminated from his position for alleged disciplinary infractions. *See Fausto*, 484 U.S. at 441, 108 S.Ct. 668. The employee filed a formal grievance with the FWS contesting his removal. *Id.* at 442, 108 S.Ct. 668. FWS concluded that the employee should not have been removed, but imposed a 30 day suspension for misuse of a government vehicle. *Id.* The employee then appealed the suspension to the Department of the Interior, which upheld FWS. *Id.* Next, the employee brought an action under the Back Pay Act, 5 U.S.C. § 5596, in the United States Claims Court (the predecessor of the United States Court of Federal Claims) seeking a review of the Department of the Interior's decision. *Id.* at 443, 108 S.Ct. 668. The Claims Court dismissed the action for lack of jurisdiction, "holding that the CSRA comprised the exclusive catalog of remedies for civil servants affected by adverse personnel action." *Id.* The Federal Circuit reversed, holding that "although the CSRA did not afford nonpreference excepted service employees [such as the plaintiff] a right of appeal to the [Merit Systems Protection Board], it did not preclude them from seeking the Claims Court review traditionally available under the Tucker Act, based on the Back Pay Act." *Fausto*, 484 U.S. at 443, 108 S.Ct. 668. The Government appealed and the United States Supreme Court granted certiorari. *Id.*

Justice Scalia, writing for the Court, observed that "[a] leading purpose of the CSRA was to replace the haphazard arrangements for administrative and judicial review of personnel action, part of the 'outdated patchwork of statutes and rules built up over almost a century' that was the civil service system." *Id.* (quoting S. REP. No. 95–969 at 3 (1978), U.S.Code Cong. & Admin.News 1978, pp. 2723, 2725). The Court also observed that:

> [c]riticism of this "system" of administrative and judicial review was widespread. The general perception was that "appeals processes [were] so lengthy and complicated that managers [in the civil service] often avoid[ed] taking disciplinary action" against employees even when it was clearly warranted. With respect to judicial review in particular, there was dissatisfaction with the "wide variations in the kinds of decisions ... issued on the same or similar matters," which were the product of concurrent jurisdiction, under various bases of jurisdiction, of the district courts in all Circuits and the Court of Claims.... [A]s the Court of Appeals for the District of Columbia Circuit repeatedly noted, beginning the judicial process at the district court level, with repetition of essentially the same review on appeal in the court of appeals, was wasteful and irrational.

*Id.* at 445, 108 S.Ct. 668 (alterations in original) (citations omitted). Consequently, "Congress responded to this situation by enacting the CSRA, which replaced the patchwork system with an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Id.* Thus, the Court concluded that "under the comprehensive and integrated review scheme of the CSRA, the Claims Court ... is not an 'appropriate authority' to review an agency's personnel determination." *Fausto*, 484 U.S. at 454, 108 S.Ct. 668.

In *Read v. United States*, 254 F.3d 1064 (Fed.Cir.2001), the United States Court of

---

**3.** 5 U.S.C. § 7703(b)(1) provides, in relevant part, that "a petition to review a final order or final decision of the Board shall be filed in the United States Court of Appeals for the Federal Circuit."

Appeals for the Federal Circuit applied *Fausto* in considering an appeal by a federal employee whose suit for pay under the Back Pay Act was dismissed by the United States Court of Federal Claims for lack of jurisdiction. The plaintiff was employed by the Federal Aviation Administration ("FAA") and removed after his security clearance was revoked. *Id.* at 1065. The FAA restored plaintiff's security clearance and reinstated him to his former position after determining that his security clearance was improperly revoked. *Id.* at 1066. The FAA did not grant plaintiff back pay for the period in which he was removed because his security clearance was revoked. *Id.* Plaintiff filed suit for the back pay under the Back Pay Act in the United States Court of Federal Claims, but the complaint was dismissed for lack of jurisdiction. *Id.*

The United States Court of Appeals for the Federal Circuit affirmed the dismissal by the United States Court of Federal Claims holding:

> *Fausto* thus established that if the [CSRA] gave the [MSPB] jurisdiction over a claim involving a specified subject matter or category of employee, the Claims Court had no jurisdiction over that claim under the Back Pay Act—even though in the particular case the employee could not assert the claim before the [MSPB].

*Read*, 254 F.3d at 1067. In addition, the Federal Circuit determined that "[h]ere, as in *Fausto*, the [CSRA's] 'comprehensive system for reviewing personnel action taken against federal employees—including administrative review by the MSPB'—'displays a clear congressional intent,' to make [MSPB] review the exclusive statutory procedure by which employees may challenge their removal." *Id.*

In this case, as in *Fausto* and *Read*, plaintiff was a federal employee covered by the CSRA and the MSPB had jurisdiction to adjudicate any challenge to his proposed suspension. *See* 5 U.S.C. §§ 2101(1),[4] 7703(a)(1).[5] The fact that plaintiff waived his right to appeal the suspension to the MSPB when he entered into the settlement is immaterial for purposes of determining whether this court has jurisdiction over his claim. *See Read*, 254 F.3d at 1067.[6]

Plaintiff characterizes this action as "a breach of contract suit and a violation of the law suit where IRS management has failed to comply with the agreement to provide [him] with a decision letter [and] IRS management has violated the law as per [5 U.S.C. § 7503] which states [he] is to receive a decision letter as soon as possible." Pl. Resp. at 1. In effect, plaintiff claims that the I.R.S. materially breached the terms of the settlement by failing to issue him a decision letter in a timely manner, stating the reasons for his suspension. *Id.* As a remedy for this alleged breach, plaintiff seeks back pay for the period during which he was suspended from duty. *See* Comp. ¶ 1. As discussed below, however, plaintiff's breach of contract claim does not render his action proper in the United States Court of Federal Claims, *See Bobula v. United States Dept. of Justice*, 970 F.2d 854 (Fed.Cir.1992).

In *Bobula*, a United States Department of Justice ("DOJ") employee brought an action in the United States District Court for the Northern District of Ohio under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), for breach of a settlement that disposed of several grievances against the DOJ. *See Bobula*, 970 F.2d at 856–57. The complaint sought injunctive and declaratory relief for the alleged breach of contract, as well as costs and attorney fees. *Id.* at 857. The United States District Court dismissed the complaint for lack of subject matter jurisdiction, holding that the action per *Fausto* was a personnel claim. *Id.* The United States Court of

---

**4.** 5 U.S.C. § 2101(1) provides that "for purposes of [the CSRA], the civil service consists of all appointive positions in the executive, judicial, and legislative branches of the Government of the United States, except positions in the uniformed services[.]"

**5.** 5 U.S.C. § 7701(a) provides that "[a]n employee ... may submit an appeal to the [MSPB] from any action which is appealable to the Board under any law, rule, or regulation."

**6.** Had plaintiff not waived his right to appeal the suspension as part of the settlement agreement, the proper procedure would have been an appeal to the MSPB, then to the United States Court of Appeals for the Federal Circuit. *See* 5 U.S.C. §§ 7701(a), 7703(b)(1).

Appeals for the Federal Circuit affirmed, reasoning that:

> [s]ince the CSRA is an integrated scheme, and since the settlement agreement arose from this integrated scheme, the settlement agreement must be enforced within the procedures provided for in the CSRA or not at all. Therefore, the settlement agreement may not be enforced as a contract outside the CSRA in any forum, including the district court under the Little Tucker Act.

*Id.* at 858. The same is true in this case. Plaintiff is not entitled to enforce the settlement as a contract outside the CSRA in any other forum, including in the United States Court of Federal Claims.

### 2. The Claim Is For Breach Of A Non–Monetary Provision of The Settlement Agreement.

The Government argues that "[e]ven if this Court possessed jurisdiction to entertain claims that are subject to the CSRA, the Court would still lack jurisdiction over this claim based on alleged breach of a non-monetary provision of a settlement agreement." Gov't Mot. to Dismiss at 8. In addition, the Government argues that jurisdiction is not proper because "the IRS's alleged failure to provide the promised letter does not mandate the payment of money damages." *Id.* at 10. The court agrees.

It is well-settled that the Tucker Act does not create any substantive right to money damages. *See Mitchell I,* 445 U.S. at 538, 100 S.Ct. 1349. Instead, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages in order for the court to have jurisdiction. *See Khan,* 201 F.3d at 1377. "[A] plaintiff seeking to invoke [this] court's jurisdiction must present a claim for

'actual, presently due money damages from the United States[.]' [C]ases seeking relief other than monetary damages ... have never been within its jurisdiction." *National Air Traffic Controllers Ass'n v. United States,* 160 F.3d 714, 716 (Fed.Cir.1998) (quoting *United States v. King,* 395 U.S. 1, 3, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)).

Plaintiff's basis for this action is the alleged failure of the I.R.S. to provide a decision letter stating the basis for his suspension, as required by the terms of the settlement. *See* Compl. ¶ 1–2; Pl. Resp. at 1. The proper remedy for this alleged violation would be for the I.R.S. to provide plaintiff with the decision letter, not to pay monetary damages. This type of relief is equitable in nature. Plaintiff cites no authority for the proposition that the proper corrective action for this alleged breach would be the payment of money damages. *See* Compl. ¶¶ 1–2; Pl. Resp. at 1–2. Moreover, such claims are not ancillary to a claim for money damages against the United States. Therefore, the United States Court of Federal Claims does not have jurisdiction over plaintiff's claims in this case. *See National Air Traffic Controllers Ass'n,* 160 F.3d at 716 (holding that although the Tucker Act "permit[s] the [United States] Court of Federal Claims to grant equitable relief [, it must be] ancillary to claims for monetary relief over which it has jurisdiction." *Id.; see also* 28 U.S.C. §§ 1491(a)(2), (b)(2)).

### 3. Plaintiff's Claim Is Also Now Moot.

A case must be justiciable in order for a court to possess subject matter jurisdiction to adjudicate it. *See North Carolina v. Rice,* 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971) ("[F]ederal courts are without power to decide questions that cannot affect the rights of litigants in the case before them.").[7] As the United States Court of

---

7. The United States Court of Federal Claims was established under Article I of the United States Constitution, and is therefore not subject to the "case or controversy" justiciability requirement to which Article III courts are bound. *See Zevalkink v. Brown,* 102 F.3d 1236, 1243 (Fed.Cir. 1996) ("[A] court established under Article I of the U.S. Constitution ... is not bound to the 'case or controversy' requirement of Article III."). Nevertheless, the court and other Article I courts follow the "case or controversy" requirement for prudential reasons. *See Zevalkink,* 102 F.3d at 1243 (approving the adoption of the "case or controversy" requirement by the United States Court of Veterans Appeals on prudential grounds); *CW Government Travel v. United*

Appeals for the Federal Circuit held in *Fisher v. United States*, 364 F.3d 1372 (2004):

Even when a federal court has attended to its subject matter jurisdiction, there remains the question of whether a particular cause is justiciable. Justiciability has both constitutional and prudential dimensions, and encompasses a number of doctrines under which courts will decline to hear and decide a cause. Though justiciability has no precise definition or scope, doctrines of standing, mootness, ripeness, and political question are within its ambit.

*Id.* at 1381 (internal citations omitted); *see also Calderon v. Moore*, 518 U.S. 149, 150, 116 S.Ct. 2066, 135 L.Ed.2d 453 (1996) ("Federal courts may not 'give opinions on moot questions or abstract propositions[.]' ").

The Government properly asserts that plaintiff's claim became moot when the I.R.S. sent him a written decision letter on August 25, 2004. *See* Gov't Mot. to Dismiss at 10. A case becomes moot when, "by virtue of an intervening event, a court ... cannot grant 'any effectual relief whatever' in favor of the [claimant]." *Calderon*, 518 U.S. at 150, 116 S.Ct. 2066 (internal citations omitted).

In *Torrington v. United States*, 44 F.3d 1572 (Fed.Cir.1995), our appellate court held that:

[a] claim is not moot, however, if the action "originally complained of is 'capable of repetition, yet evading review.' " *Id.* To qualify for this exception, the challenged action must meet two conditions. First, the action must "in its duration be too short to be litigated prior to its cessation or expiration." *Id.* "Second, there must be a 'reasonable likelihood' that the party 'will again suffer the [injury] that gave rise to the suit.' "

*Id.* at 1577 (internal citations omitted).

In this case, plaintiff's breach of contract claim was based on the failure of the I.R.S. to issue a decision letter setting forth the reasons for the suspension. *See* Compl. ¶¶ 1–2; Pl. Resp. at 1. The I.R.S. issued a decision letter to plaintiff on August 25, 2004.

*States,* 46 Fed.Cl. 554 (2000) (adhering to "case or controversy" requirement in applying moot-

*See* Def.App. at 3. Since plaintiff is now retired from the I.R.S., it is unlikely that this type of alleged breach would be repeated. Therefore, plaintiff cannot be granted any effective relief by the court. *Calderon,* 518 U.S. at 150, 116 S.Ct. 2066. ("[A case is] moot when ... a court ... cannot grant 'any effectual relief whatever[.]' ").

### CONCLUSION

The court lacks subject matter jurisdiction to adjudicate the claims asserted in the complaint, which also are now moot. Accordingly, the Government's September 10, 2004 Motion to Dismiss is granted. The Clerk is ordered to dismiss the June 14, 2004 Complaint.

**IT IS SO ORDERED.**

United States Court of Federal Claims.

ness doctrine to dismiss complaint).