Mary A. **LESTER**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 08–332C.

United States Court of Federal Claims.

Feb. 17, 2009.

Mary A. Lester, appearing pro se, Inglewood, California, Plaintiff.

Ellen M. Lynch, with whom were Gregory G. Katsas, Assistant Attorney General, Jeanne E. Davidson, Director, and Donald E.

Kinner, Assistant Director, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., for Defendant.

### OPINION AND ORDER

WHEELER, Judge.

*Pro se* Plaintiff Mary Lester filed a complaint in this Court seeking back pay, vacation and sick leave under the Back Pay Act, 5 U.S.C. § 5596 (2006), and the Administrative Procedures Act ("APA"), 5 U.S.C. § 706 (2006). Ms. Lester is a federal employee working for the Internal Revenue Service ("IRS"). In July 2005, the IRS indefinitely suspended Ms. Lester pending the resolution of criminal charges filed against her by the State of California. The IRS allowed her to return to work in February 2006, after she was exonerated of all charges, but the IRS refused to award her back pay, vacation and sick leave for the seven-month period of her suspension. This case is before the Court on Defendant's motion under Rule 12(b)(1) of the Court of Federal Claims ("RCFC") to dismiss for lack of subject matter jurisdiction. Because neither the Back Pay Act nor the APA grants this Court jurisdiction under the circumstances presented, Defendant's motion to dismiss is GRANTED.

### Background

Mary Lester currently works for the United States Department of the Treasury as an IRS Revenue Officer in the Small Business/Self Employed Division, Long Beach, California. Compl. ¶ 1 (May 6, 2008). Plaintiff has worked for the IRS for over 36 years. *Id.* On July 15, 2005, Ms. Lester received a letter of indefinite suspension without pay, pending resolution of criminal charges relating to her involvement in an auto accident on December 11, 2000. *Id.* ¶ 3. Ms. Lester sought advice from the National Treasury Employee's Union ("NTEU"), which informed her that, if she were exonerated of all charges, she would receive her back pay, and sick and annual leave. Pl.'s Resp. 3 (Aug. 25, 2008). The Treasury Inspector General for Tax Administration [1] conducted a one-year investigation of the incident and found no fraud or other unethical job-related activity from the time of the accident to March 2000, when charges were filed against Ms. Lester. Compl. ¶ 6. Ms. Lester ultimately was exonerated of all charges on January 30, 2006. *Id.* ¶ 7. The IRS notified Ms. Lester that she should return to work on February 20, 2006, making the total length of her suspension just over seven months. *Id.* ¶ 7.

In or about March 2006, the NTEU initiated a grievance on behalf of Ms. Lester seeking back pay, vacation, and sick leave for the period July 28, 2005 through February 20, 2006. *See* Compl. ¶¶ 8–9. According to Ms. Lester's complaint, her IRS Group Manager refused to participate in "Stage I" of the grievance process.[2] *Id.* ¶ 9. On or about April 4, 2006, Ms. Lester and the NTEU President met with an IRS representative to conduct "Stage II" of the process during which Ms. Lester presented arguments for receiving her back pay. *Id.* ¶¶ 10–11. Ms. Lester alleges that, on May 10, 2008,[3] the IRS notified NTEU that they had denied Ms. Lester's request. *Id.* ¶ 12. According to Ms. Lester's complaint, this notice came one month late. *Id.* When Ms. Lester filed for "Stage III review" on August 22, 2008, the

---

1. The Treasury Inspector General for Tax Administration is an independent government organization established in January 1999 in accordance with the Internal Revenue Service Restructuring and Reform Act of 1998 to provide independent oversight of IRS activities, including the prevention and detection of fraud within the IRS.

2. The complaint is unclear regarding the different "stages" of the grievance process or why Plaintiff pursued such stages. It is likely that these "stages" represent the procedural steps set forth in the collective bargaining agreement between the NTEU and the IRS for resolution of employee grievances.

3. Ms. Lester's complaint, as well as subsequent documents filed with this Court, state that the IRS notified NTEU that Ms. Lester's claim was denied "on May 10, 2008" and that Ms. Lester filed for a Stage III review "on August 22, 2008." However, because Ms. Lester filed her complaint in this Court on May 6, 2008, the Court is convinced that these two dates are in error, and must be "2006" or "2007" instead. As the pending motion deals with an issue of jurisdiction and not issues of fact, the Court is able to resolve Defendant's motion to dismiss without further inquiry into the correct dates.

complaint alleges that the IRS refused to address the grievance because she had missed the Stage III deadline. *Id.* ¶ 13; Pl.'s Sur-reply 1 (Nov. 6, 2008).

Ms. Lester filed a complaint in this Court on May 6, 2008 seeking back pay and sick, annual, and holiday leave under the Back Pay Act and alleging that the IRS's refusal to conduct a Stage III review constituted "arbitrary and capricious" agency conduct under the APA.[4] Compl. 1–2, ¶ 17. On July 7, 2008, Defendant filed a motion to dismiss the complaint pursuant to RCFC 12(b)(1) for lack of jurisdiction. Plaintiff filed her response on August 25, 2008, and Defendant replied on September 29, 2008. Plaintiff filed a sur-reply on November 6, 2008 by leave of the Court. Defendant completed briefing on its motion on November 19, 2008, when it filed a response to Plaintiff's sur-reply pursuant to this Court's November 6, 2008 order.

### Discussion

■ The United States Court of Federal Claims is a court of limited jurisdiction. *Southfork Sys., Inc. v. United States,* 141 F.3d 1124, 1132 (Fed.Cir.1998). As such, plaintiffs bear the burden of establishing by a preponderance of the evidence that this Court has jurisdiction. *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 748 (Fed.Cir.1988). While *pro se* litigants are afforded considerable leeway in presenting their pleadings to the Court, they are not exempt from meeting jurisdictional requirements. *See Kelley v. Sec'y, Dep't of Labor,* 812 F.2d 1378, 1380 (Fed.Cir.1987).

■ The Tucker Act empowers the Court of Federal Claims "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1) (2006). While the Tucker Act allows a plaintiff to bring certain monetary actions against the United States, *Doe v. United States,* 372 F.3d 1308, 1312 (Fed.Cir.2004), it is merely juris-

dictional in nature and is not a statutory remedy. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980). To establish jurisdiction under the Tucker Act where no contract is at issue, the plaintiff must prove it has a monetary claim against the United States founded upon the Constitution, an act of Congress, or a regulation. *See Wopsock v. Natchees,* 454 F.3d 1327, 1331–32 (Fed.Cir.2006). Ms. Lester based her claim upon acts of Congress, particularly the Back Pay Act and the APA. Unfortunately for Ms. Lester, neither statute grants this Court subject matter jurisdiction under the circumstances presented.

### A. The Back Pay Act

■ The Back Pay Act provides in pertinent part:

> An employee of an agency who, on the basis of a timely appeal or an administrative determination ... is found by an appropriate authority under the applicable law, rule, regulation or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action ... [is entitled to back pay].

5 U.S.C. § 5596(b)(1). The Back Pay Act *can* qualify as a money-mandating statute granting this Court jurisdiction under the Tucker Act. *Worthington v. United States,* 168 F.3d 24, 26 (Fed.Cir.1999). However, it is well established that the Civil Service Reform Act of 1978 ("CSRA") divests this Court of jurisdiction over personnel actions taken against federal employees when those actions are covered by the CSRA. *United States v. Fausto,* 484 U.S. 439, 454–55, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988) (discussing the CSRA, Pub.L. No. 95–454, 92 Stat. 1111 (1978)).

The CSRA covers three general types of personnel actions. *Bosco v. United States,* 931 F.2d 879, 883 (Fed.Cir.1991). Chapter 23 forbids "prohibited personnel actions" such as discrimination, coercion of political activity, nepotism, and reprisal against whistleblowers. 5 U.S.C. § 2302 (2006). Chapter 43 covers removals and reduction in pay

---

**4.** The Court assumes that Plaintiff invoked the APA to seek an order requiring the IRS to proceed to Stage III in the grievance process. However, the complaint is not pled with such particularity.

based upon unacceptable performance. 5 U.S.C. § 4303 (2006). Chapter 75 covers "adverse personnel actions" such as removals, furloughs of 30 days or less, reductions in grade or pay (otherwise not covered in section 4303), suspensions for less than 14 days, and suspensions for more than 14 days. 5 U.S.C. § 7512 (2006).

■ Where the employment action giving rise to a claim is covered in one of these three chapters, the CSRA outlines the comprehensive and exclusive procedure by which the employee may seek back pay. *Fausto,* 484 U.S. at 455, 108 S.Ct. 668. Consequently, where the CSRA covers the employment action, this Court has no jurisdiction. *See e.g., Fausto,* 484 U.S. at 448–49, 454–55, 108 S.Ct. 668 (holding that the Court of Federal Claims lacked jurisdiction to award back pay for an improper removal (under section 7512) even where the CSRA did not outline specific procedures for the employee, thus interpreting the CSRA's silence as *precluding* the employee from any remedy in the Court of Federal Claims); *Read v. United States,* 254 F.3d 1064, 1067–68 (Fed.Cir.2001); *Worthington v. United States,* 168 F.3d 24, 26 (Fed.Cir.1999); *McClary v. United States,* 775 F.2d 280, 282 (Fed.Cir.1985). Even where the agency suspends the employee pending the outcome of criminal investigations as the IRS did here, the suspension is covered by the CSRA and the Court of Federal Claims lacks jurisdiction. *Salinas v. United States,* 323 F.3d 1047 (Fed.Cir.2003) (affirming the trial court's dismissal for lack of jurisdiction over the employee's claim for back pay because the suspension giving rise to the claim was covered under section 7512).

■ As noted above, the CSRA does not cover *all* personnel actions. *Worthington v. United States,* 168 F.3d 24, 26 (Fed.Cir.1999). Where a federal employee seeking back pay can show that the adverse personnel action fell outside the scope of the CSRA, that employee may use the Back Pay Act to establish this Court's subject matter jurisdiction. *Romero v. United States,* 38 F.3d 1204, 1211 (Fed.Cir.1994) (citing *Bosco v. United States,* 931 F.2d 879, 883 (Fed.Cir.1991)) (allowing a federal employee to sue for back pay where the agency improperly withheld pay, as "withholding of pay for income tax purposes" is not an adverse personnel action covered in the CSRA).

Here, however, the seven-month suspension giving rise to Ms. Lester's claim *is* covered by the CSRA. 5 U.S.C. § 7512 (covering "adverse personnel actions" such as removals, furloughs of 30 days or less, reductions in grade or pay, suspensions for less than 14 days, and suspensions for more than 14 days). The CSRA thus is the exclusive mechanism by which Ms. Lester may pursue her claim for back pay. *Fausto,* 484 U.S. at 455, 108 S.Ct. 668.

Section 7513 of the CSRA outlines the procedures by which most employees may pursue claims against the agency regarding such suspensions and authorizes these employees to appeal the agency decisions to the Merit Systems Protection Board ("MSPB") (as described in more detail in 5 U.S.C. § 7701). 5 U.S.C. § 7513 (2006). The CSRA treats union member employees differently, however, and contains specific provisions invoking the application of collective bargaining agreements:

> Any collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability. *Except as provided in subsection (d), (e) and (g) of this section,* the procedures shall be the exclusive administrative procedures for resolving grievances which fall within its coverage.

5 U.S.C. § 7121 (2006) (emphasis added). Subsection (e) applies only to adverse employment actions covered under section 7512 such as suspensions for more than 14 days and gives union employees the option to pursue their remedy in accordance with the collective bargaining agreement or appeal to the MSPB using the procedures of section 7701:

> Matters covered under section 7512 of this title which also fall within the coverage of the negotiated grievance procedure may, in the discretion of the aggrieved employee, be raised either under the appellate procedures of section 7701 of this title or under the negotiated grievance procedure, but not both.

5 U.S.C. § 7121(e)(1). An employee's decision between the two options is binding:

> An employee shall be deemed to have exercised his option under this subsection to raise a matter either under the applicable appellate procedures or under the negotiated grievance procedure at such a time as the employee timely files a notice of appeal under the applicable appellate procedures or timely files a grievance in writing in accordance with the provisions of the parties' negotiated grievance procedure, whichever occurs first.

*Id.*

The IRS invoked the CSRA when it suspended Ms. Lester for more than 14 days. 5 U.S.C. § 7512. At that point, Ms. Lester had two options as a union member. She could pursue her grievance through the procedure outlined in the collective bargaining agreement; or she could appeal her suspension directly to the MSPB. 5 U.S.C. § 7121(e)(1). From the complaint, it appears that Ms. Lester elected to pursue her remedies under the collective bargaining agreement, but this fact is not entirely clear.[5] For the purposes of the pending motion, however, the Court need not examine the exact actions taken by Ms. Lester. The dispositive facts are that the CSRA covers the adverse action giving rise to Ms. Lester's complaint and mandates that she choose between two procedures, neither of which includes filing a complaint in the Court of Federal Claims. Ms. Lester failed to appeal her suspension or her later denial of back pay to the MSPB. Ms. Lester appears not to have pursued all of her options under the collective bargaining agreement.[6] Instead, Ms. Lester filed a complaint under the Back Pay Act in this Court. The Back Pay Act fails to confer subject matter jurisdiction on this Court,

however, as this Court lacks jurisdiction over employment actions covered by the CSRA. *Fausto,* 484 U.S. at 454–55, 108 S.Ct. 668.

Accordingly, Defendant's motion to dismiss under RCFC 12(b)(1) for lack of jurisdiction over the claim for back pay must be granted.

### B. *The Administrative Procedures Act*

Plaintiff also contends that the APA provides a basis for this Court's jurisdiction. The APA prohibits agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. Here, Ms. Lester alleges that the IRS engaged in arbitrary and capricious conduct under the APA when it denied her Stage III review because the deadline had passed even though the IRS allegedly had returned her Stage II denial a month late. Compl. ¶ 17. While Ms. Lester may have a viable claim, the Court of Federal Claims is not the proper court to hear it.

■ The APA is not a money mandating statute. *See Martinez v. United States,* 333 F.3d 1295, 1313 (Fed.Cir.2003). Rather, the APA waives sovereign immunity only for claims seeking "relief *other than* money damages." 5 U.S.C. § 702 (2006) (emphasis added). As this Court's jurisdiction under the Tucker act is limited to claims for monetary relief, except for limited circumstances not applicable here, the APA fails to grant this Court subject matter jurisdiction over Ms. Lester's claim. *United States v. Testan,* 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976).

Accordingly, while Ms. Lester may be able to demonstrate that the IRS's actions were arbitrary and capricious, and that the IRS should be estopped from asserting a Stage III deadline given its late return of the Stage

---

5. The complaint states that "in March of 2006 Plaintiff was advised by the union that she could file a grievance and the Union President filed the grievance on her behalf." Compl. ¶ 8. The complaint further states that Ms. Lester's IRS Group Manager refused to participate in the "first step of the NTEU Union grievance," (*Id.* ¶ 9), and that Ms. Lester attended the "second step of the grievance process" on or around April 4, 2006. *Id.* ¶ 10. From these statements the Court finds it likely that Ms. Lester invoked the option to pursue her claim through the grievance process

outlined in the collective bargaining agreement. However, the complaint does not set forth the actual language of the agreement nor does the complaint describe the collective bargaining agreement's grievance procedures.

6. The Court is aware that the IRS may not have allowed Ms. Lester to pursue her options completely under the collective bargaining agreement as they viewed her grievance as time-barred. This issue will be discussed below in Part B.

II denial, the Court of Federal Claims has no jurisdiction to compel such actions where they are not accompanied by a monetary claim.

### Conclusion

For the reasons stated above, Defendant's motion to dismiss pursuant to RCFC 12(b)(1) for lack of subject matter jurisdiction is GRANTED. Plaintiff's complaint shall be DISMISSED without prejudice.

IT IS SO ORDERED.