**Renee R. BERRY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 08–330 C.

United States Court of Federal Claims.

April 30, 2009.

Renee R. Berry, pro se, plaintiff.

Gregg M. Schwind, Court of Federal Claims Section, Civil Division, United States Department of Justice, for defendant.

## OPINION and ORDER

BLOCK, Judge.

## I. INTRODUCTION

In *Berry v. United States,* 86 Fed.Cl. 24 (2009) *("Berry I")* this court addressed defendant's RULES OF THE UNITED STATES COURT OF FEDERAL CLAIMS ("RCFC") 12(b)(1) motion to dismiss. In its motion, defendant asserted that 28 U.S.C. § 1500 [1] divested this court of jurisdiction to hear plaintiff's case because on the same day that she filed her complaint in this court, she filed her appeal of a Merit Systems Protection Board ("MSPB") decision concerning an identical claim [2] at the United States Court of Appeals for the Federal Circuit. Def.'s Mot. to Dismiss at 3 & Ex. 3 (presenting plaintiff's petition for review in *Berry v. Merit Sys. Prot. Bd.,* No.2008-3235, 2009 WL 89668 (Fed.Cir. Jan.15, 2009)). Defendant accordingly argued for the court to impose a rule that would deem all same-day filings "pending" for purposes of applying § 1500, regardless of the sequence in which the claims were actually filed. *See* Def.'s Supp. Br. at 5 (citing *Harbuck v. United States,* 378 F.3d 1324, 1328 (Fed.Cir.2004); *United States v. County of Cook,* 170 F.3d 1084, 1091 (Fed. Cir.1999)).

This court rejected defendant's position and, joining the majority of courts to have considered the issue,[3] held that the exact

---

1. Section 1500 provides, in pertinent part, that "[this court] shall not have jurisdiction of any claim for or in respect to which the plaintiff ... *has pending* in any other court any suit or process against the United States" (emphasis added). In other words, this court lacks jurisdiction "over the claim of a plaintiff who, upon filing, has an action pending in any other court 'for or in respect to' the same claim." *Keene Corp. v. United States,* 508 U.S. 200, 209, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993) (quoting § 1500).

2. Plaintiff does not dispute that her claim before this court was identical to her claim on appeal at the Federal Circuit.

3. *See, e.g., United Keetoowah Band of Cherokee Indians in Okla. v. United States,* 86 Fed.Cl. 183, 191 (2009); *Nez Perce Tribe v. United States,* 83 Fed.Cl. 186, 191 (2008); *Salt River Pima–Maricopa Indian Cmty. v. United States,* No. 06–943L, 2008 WL 1883170, at *4–*5 (Fed.Cl. Apr.24, 2008); *Ak–Chin Indian Cmty. v. United States,* 80 Fed.Cl. 305, 308 n. 4 (2008); *Breneman v. United States,* 57 Fed.Cl. 571, 575–77 (2003) (all holding that there is no *per se* "pending" rule with regard to same-day filings). *Contra Passamaquoddy Tribe v. United States,* 82 Fed.Cl. 256, 263–72 (2008) (holding that there is a *per se* "pending" rule with regard to same day filings).

order of plaintiff's filings was dispositive. *See Berry I*, 86 Fed.Cl. at 27–30 (citing *Tecon Eng'rs, Inc. v. United States*, 170 Ct.Cl. 389, 343 F.2d 943, 949 (1965) for the proposition that "[i]f ... plaintiff is able to demonstrate that she filed her complaint in this court before filing her petition for review at the Federal Circuit, then § 1500 would not apply"). Nevertheless, this court also noted that plaintiff had not yet provided sufficient evidence to establish the sequence of her filings. *Id.* at 29. Recognizing plaintiff's *pro se* status, the court permitted plaintiff a second opportunity to submit such evidence before ruling on defendant's motion. *Id.* at 29–30.

But before concluding, this court also expressed "grave doubts" about whether it possesses jurisdiction over plaintiff's claim, regardless of § 1500's possible application. *Id.* at 30. This court ordered supplemental briefing on whether plaintiff was presenting a valid Tucker Act claim, and, if so, whether the Civil Service Reform Act of 1978 ("CSRA")[4] would nevertheless preclude this court from exercising jurisdiction over such a claim. *Id.*

Plaintiff has since submitted a declaration detailing the sequence of her filings, and the parties have submitted their supplemental briefs. Thus, this court turns, once again, to defendant's motion to dismiss. For the reasons set forth below, this court determines that plaintiff filed her claim in this court before she filed she filed her claim at the Federal Circuit, and, therefore, § 1500 does not apply. Nonetheless, this court also holds, *sua sponte*, that the CSRA precludes the court from exercising jurisdiction over plaintiff's otherwise-valid Tucker Act claim.

Accordingly, it is on this ground that the court grants defendant's motion to dismiss.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The following facts for this motion to dismiss are undisputed. Plaintiff was a patent examiner at the United States Patent and Trademark Office ("PTO"), but was removed from this position on January 6, 2006. Def.'s Mot. to Dismiss Ex. 1 at 2. Plaintiff immediately filed a grievance pursuant to the collective bargaining agreement ("CBA") between her union (the Patent Office Professional Association ("POPA")), and the PTO. *Id.* The parties reached a settlement agreement on August 14, 2006. Compl. at ¶1; Pl.'s Resp. Ex. 2 at 5. Pursuant to the terms of the settlement agreement, the PTO reinstated plaintiff to her original position without back pay and retroactively placed her in "leave without pay" ("LWOP")[5] status for the period between her disputed removal and her reinstatement. Pl.'s Resp. Ex. 2 at 1.

On October 15, 2006, the PTO initially granted plaintiff a "within-grade increase in pay" ("WIGI")[6] from GS–13 step 6 to GS–13 step 7. Compl. at ¶1; Def.'s Mot. to Dismiss Ex. 1 at 3; Pl.'s Supp. Br. at 1, Dec. 1, 2008. Shortly thereafter, the PTO rescinded the WIGI because plaintiff had not fully performed the requisite two years of time in grade, citing her previous seven months of LWOP status.[7] Compl. at ¶2; Def.'s Mot. to Dismiss Ex. 1 at 3; Pl.'s Supp. Br. at 2, Dec. 1, 2008.

Plaintiff then filed an informal grievance requesting reconsideration of the PTO's decision to rescind the WIGI. *Berry*, 2009 WL

---

4. Pub.L. No. 95–454, 92 Stat. 1111 (1978) (codified as amended in scattered sections of 5 U.S.C.).

5. "Leave without pay" is defined as "an absence from duty in a nonpay status." 5 C.F.R. § 630.1202.

6. A "within-grade increase" is defined as "a periodic increase in an employee's rate of basic pay from one step of the grade of his or her position to the next higher step of that grade." 5 C.F.R. § 531.403.

7. To advance to the next step within the same grade, a government employee must successfully

complete the statutorily-prescribed waiting period. *See* 5 U.S.C. § 5335(a); 5 C.F.R. §§ 531.404–.405. Civilian employment in any branch of the federal government is considered creditable service for purposes of determining whether an employee has completed the appropriate waiting period. *See* 5 C.F.R. § 531.406(a). "Service credit is given ... for periods of annual, sick, and *other leave with pay;* advanced annual and sick leave; service under a temporary or term appointment; and service under an interim appointment made under [5 C.F.R. § 772.102]." *Id.* (emphasis added).

89668, at *1. The PTO reiterated its position that time in LWOP status does not constitute creditable service and, therefore, plaintiff was not entitled to a WIGI at that time. *Id.* Plaintiff appealed the PTO's decision to the MSPB, complaining that the PTO failed to properly restore her to duty pursuant to the settlement agreement and, as a result, the PTO improperly denied her a WIGI. Compl. at ¶ 5; Def.'s Mot. to Dismiss Ex. 1 at 1. The MSPB dismissed plaintiff's appeal for lack of jurisdiction, holding that the CBA's "negotiated grievance procedure is the exclusive remedy for resolving such a dispute." Def.'s Mot. to Dismiss Ex. 1 at 4.

On May 5, 2008, plaintiff filed a timely petition for review from the MSPB's decision to the United States Court of Appeals for the Federal Circuit.[8] Def.'s Mot. to Dismiss Ex. 3. On the same day, plaintiff filed her complaint in this court.[9] Compl. at 1. Plaintiff's complaint did not address the subject of this court's jurisdiction. Compl. at 1–3. Rather, plaintiff merely asked that "this [c]ourt exercise jurisdiction and grant her WIGI." Compl. at 3.

### III. DISCUSSION

█ This case revolves around the issue of the Court of Federal Claims' jurisdiction. While it is true that when assessing a pending motion to dismiss for lack of jurisdiction, a court must accept the verity of the complaint's undisputed factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 283, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); *Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed.Cir. 1989), it is equally true that a *pro se* plaintiff retains the traditional plaintiff's burden of factually establishing this court's jurisdiction by a preponderance of the evidence. *See Taylor v. United States*, 303 F.3d 1357, 1359 (Fed.Cir.2002) (citing *Thomson v. Gaskill*, 315 U.S. 442, 446, 62 S.Ct. 673, 86 L.Ed. 951 (1942)); *Giles v. United States*, 72 Fed.Cl. 335, 336 (2006); *Tindle v. United States*, 56

Fed.Cl. 337, 341 (2003); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Consequently, while courts hold *pro se* plaintiffs' pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), "they are not exempt from meeting jurisdictional requirements." *Lester v. United States*, 85 Fed.Cl. 742, 743 (2009) (citing *Kelley v. Sec'y Dep't of Labor*, 812 F.2d 1378, 1380 (Fed.Cir.1987)); *see Henke v. United States*, 60 F.3d 795, 799 (Fed.Cir.1995) (recognizing that a litigant's "act[ing] *pro se* in the drafting of his complaint may explain its ambiguities, but it does not excuse its failures"). It is those requirements to which this court now must turn.

### A. Section 1500 Does Not Apply to the Instant Case

█ As explained above, this court allowed plaintiff a second opportunity to present evidence regarding the sequence of her filings, and thereby establish this court's jurisdiction. *Berry I*, 86 Fed.Cl. at 29. In other words, if plaintiff can demonstrate that she filed her complaint in this court before she filed her petition for review at the Federal Circuit, then § 1500 does not divest this court of jurisdiction. *Id.* at 30; *see Tohono O'Odham Nation v. United States*, 559 F.3d 1284, 1291 (Fed.Cir.2009) ("[Section 1500] merely requires that the plaintiff file its action in the Court of Federal Claims *before* it files its district court complaint."). "[A] complaint is deemed filed in the Court of Federal Claims by *delivering* it to (A) the Clerk of the Court; or (B) to a judge who agrees to accept it for filing." *United Keetoowah Band of Cherokee Indians in Okla. v. U.S.*, 86 Fed.Cl. at 191 (citing RCFC 5(d)(2)) (emphasis added). At the Federal Circuit, "[a] petition for review [from an agency order] ... is filed when the petition for review ... is *received* in the court." FED. CIR. R. 15

---

8. It was during the time that this court was considering defendant's motion to dismiss that the Federal Circuit affirmed the MSPB's dismissal of plaintiff's action for lack of jurisdiction holding that "the CBA grievance procedures are Ms. Berry's exclusive remedial option." *Berry*, 2009 WL 89668, at *3.

9. While both the petition for review at the Federal Circuit and the complaint in this court were date-stamped, neither was time-stamped. Def.'s Mot. to Dismiss Ex. 3; Compl. at 1.

(practice notes) (emphasis added). Accordingly, if plaintiff delivered her complaint to this court before the Federal Circuit received her petition for review, § 1500 does not apply to the instant case.

In an effort to establish the sequence of her filings, plaintiff submitted an unsworn declaration.[10] Plaintiff contends that on May 5, 2008, she "filed" her complaint with the clerk of this court prior to 5:15 p.m. and placed her petition for review in the Federal Circuit's night-box between 11 p.m. and midnight. Berry Aff. at 1, Mar. 13, 2009. Plaintiff's declaration is corroborated by the Federal Circuit petition for review itself, which bears the stamp: "RECEIVED FROM NIGHT BOX [on] MAY 6, 2008." The Federal Circuit's night-box is only available to parties between the hours of 5 p.m. and midnight. *See* FED. CIR. R. 25 (practice notes). Thus, it appears likely that plaintiff delivered her complaint to the clerk's office in this court *before* the Federal Circuit received her petition for review. Defendant has not submitted any evidence to the contrary.

Instead, defendant cites *Nez Perce Tribe*, 83 Fed.Cl. at 192–94, for the proposition that "[e]vidence of when Ms. Berry deposited her complaint and notice of appeal with the clerks' offices is not sufficient to sustain her burden to demonstrate jurisdiction in this [c]ourt." Def.'s Supp. Br. at 1–2 n.1, Mar. 13, 2009. To be sure, the court in *Nez Perce Tribe* did state that "[d]elivery of a complaint to the clerk's office is not dispositive of the time a complaint is filed." 83 Fed.Cl. at 192–93. Facing a situation where there was a near simultaneous delivery of complaints to both the district court and the Court of Federal Claims, the court held that the district court complaint should not have been deemed "filed" at the same time because the filing fee for that complaint was not initially proffered. Relying on testimony reflecting the practices of both courts, the court opined that a complaint can not be deemed "filed" on mere delivery, but instead must wait until the respective court's clerk's office can review the filing for (what was termed) "sufficiency." *Id.* at 193–94. Requirements such as the proffering of the appropriate filing fee, the assignment of a docket number, and the assignment of the case to a particular judge are criteria that may bear on the determination of when a complaint is sufficient for filing purposes. *Id.*

Nonetheless, whether *Nez Perce Tribe* stands for the broader proposition that a claim is not deemed "filed" upon delivery, but only upon the review for "sufficiency" by the respective court's clerk's office, is irrelevant to the case before this court. Here, plaintiff personally hand-delivered her complaint to this court and her petition for review to the Federal Circuit, obviating the possibility of near simultaneous deliveries that the court in *Nez Perce Tribe* faced. And, significantly, defendant does not allege any procedural defects in plaintiff's filings, nor is there any evidence in the record demonstrating the "insufficiency" of her Court of Federal Claims complaint or Federal Circuit petition. Clearly, the clerk of each court accepted their respective filing.

Accordingly, this court holds that plaintiff has demonstrated by a preponderance of the evidence that she filed her complaint in this court before she filed her petition for review at the Federal Circuit. Therefore, § 1500 does not apply to the instant case. Nonetheless, " § 1500 is only one piece of the jurisdictional puzzle." *Berry I*, 86 Fed.Cl. at 26. Merely because § 1500 does not divest this court of jurisdiction does not mean that this court possesses jurisdiction over plaintiff's claim.

## B. The CSRA Precludes This Court from Exercising Jurisdiction over Plaintiff's Claim

 The Tucker Act principally defines this court's jurisdiction and provides, in pertinent part:

---

**10.** Plaintiff's submission was titled "affidavit," but it did not include the necessary attestation of an officer authorized to administer oaths. *See* BLACK'S LAW DICTIONARY 62 (8th ed.2004) (defining "affidavit" as "[a] voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths, such as a notary public"). Nevertheless, this court may consider plaintiff's submission as evidence pursuant to 28 U.S.C. § 1746, which permits the use of unsworn declarations under penalty of perjury in lieu of affidavits.

The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). However, as is well-accepted, the Tucker Act by itself does not create substantive rights; it is simply a jurisdictional statute that waives sovereign immunity for claims premised on other sources, such as a statute or contract. *United States v. Navajo Nation,* —— U.S. ——, 129 S.Ct. 1547, 1551–52, 173 L.Ed.2d 429 (2009) (citing *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 63 L.Ed.2d 607 (1980); *United States v. Testan,* 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)). "The other source of law ... triggers liability only if it can fairly be interpreted as mandating compensation by the [f]ederal [g]overnment." *Navajo Nation,* 120 S.Ct. at 1552 (internal quotations omitted).

In the instant case, it was not immediately apparent whether plaintiff was bringing a claim based on her settlement agreement with the PTO, some other source of law, or both. Indeed, while plaintiff stated that "[t]his is a case involving a money issue arising from a contract or [s]ettlement [a]greement," she also stated that she was not requesting enforcement of the settlement agreement because "[t]here is no provision in the settlement agreement for a WIGI." Pl.'s Resp. at 1–2. Of course, plaintiff's approach left the court to wonder what source, if not the settlement agreement, entitles plaintiff to a WIGI in the first place and whether that source could be interpreted as mandating compensation by the federal government. Accordingly, the court ordered supplemental briefing on the matter. *Berry I,* 86 Fed.Cl. at 30.

To date, plaintiff has not identified a money-mandating statute or regulation that might support her claim,[11] nor is one readily apparent. The statute that principally addresses the subject of WIGIs, 5 U.S.C. § 5335, provides that an agency shall grant an employee a WIGI where the employee has: (1) completed the prescribed waiting period; (2) not received an equivalent increase in pay during that period; and (3) demonstrated "an acceptable level of competence *as determined by the head of the agency.*" 5 U.S.C. § 5335(a) (emphasis added). This final prong rests on an exercise of discretion. *Duke v. Dep't of the Air Force,* 230 Ct.Cl. 977, 979 (1982). Yet, "[d]iscretionary authority 'does not give rise to a claim of money damages against the United States.'" *Flowers v. United States,* 75 Fed.Cl. 615, 635 (2007) (quoting *Holder v. Dep't of the Army,* 229 Ct.Cl. 417, 670 F.2d 1007, 1011 (1982)). Thus, § 5335 cannot serve as the money-mandating source necessary for plaintiff to maintain her claim. *See Duke,* 230 Ct.Cl. at 979 ("[Section 5335] does not provide any right to recover money damages from the United States nor does it give authority to [this court] to exercise any discretion involved or to review the exercise of discretion by the agency head absent a manifest abuse of discretion....").

 Without a money-mandating statute or regulation, plaintiff is left with only the settlement agreement to maintain her claim. Generally, the breach of a settlement agreement with the United States falls within this court's Tucker Act jurisdiction. *See, e.g., Greenhill v. United States,* 81 Fed.Cl. 786, 790 (2008); *Stovall v. United States,* 71 Fed.Cl. 696, 698 (2006). As the court now understands plaintiff's position, defendant's agreement to restore plaintiff to her previous position gave rise to defendant's obligation to provide plaintiff a WIGI. Compl. at ¶ 4; Pl.'s Resp. at 2; Pl.'s Supp. Br. at 6, Mar. 13, 2009 (all citing *Normoyle v. Dep't of Air Force,* 63 M.S.P.R. 391 (1994) and *Harris v. Dep't of Ag.,* 50 M.S.P.R. 686 (1991) for the proposi-

---

**11.** Indeed, aside from 28 U.S.C. § 1491, the only statute or regulation plaintiff references in her pleadings and briefs is 5 C.F.R. § 531.406—which, as mentioned above, only discusses what constitutes "creditable service" for determining whether an employee has completed the requisite waiting period for a WIGI. This court does not find any provision within § 531.406 that it could reasonably construe as money-mandating.

tion that if plaintiff is restored, she must be returned "as nearly as possible to the *status quo ante*" and any "denial or delay" in granting plaintiff a WIGI "must be viewed as punitive in nature"). Accordingly, this court's analysis proceeds on the assumption that plaintiff is attempting to enforce her settlement agreement with the United States in this court, just as she attempted to enforce the same settlement agreement before the MSPB and the Federal Circuit.

■■■ Having established that the breach of the grievance settlement agreement with the United States generally falls within this court's Tucker Act jurisdiction, the question that arises here is whether the CSRA removes that jurisdiction. *See Whitman v. Dept. of Transp.*, 547 U.S. 512, 514, 126 S.Ct. 2014, 164 L.Ed.2d 771 (2006) ("The question, then, is not whether 5 U.S.C. § 7121 confers jurisdiction, but whether § 7121 (or the CSRA as a whole) removes the jurisdiction given to the federal courts."). There is no question that federal employment grievance disputes pursuant to a collective bargaining agreement fall within the exclusive purview of the CSRA.

The leading CSRA case is *United States v. Fausto*, 484 U.S. 439, 444–45, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988), in which the Supreme Court held that the "leading purpose of the CSRA was to replace the [pre-existing] haphazard arrangements for administrative and judicial review of [government] personnel action" with "an integrated scheme ... designed to balance the legitimate interests ... of federal employees with the needs of sound and efficient administration." Under the CSRA's "comprehensive and integrated review scheme," this court is "not an appropriate authority to review an agency's personnel determination." *Id.* at 454, 108 S.Ct. 668. In other words, this court lacks jurisdiction "over personnel actions covered by the CSRA," *Worthington v. United States*, 168 F.3d 24, 26 (Fed.Cir.1999), even where such actions "would otherwise constitute a valid Tucker Act claim." *Gallo v. United States*, 529 F.3d 1345, 1352 (Fed.Cir.2008).

The CSRA's "integrated review scheme" not only sets forth the MSPB's jurisdiction over agency personnel actions,[12] but also allows for collective bargaining agreements and the negotiated grievance procedures contained therein. *See* 5 U.S.C. § 7121(a)(1) ("Except as provided ..., any collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability."). "For an employee covered by [such] a collective bargaining agreement ..., the negotiated grievance procedures contained in the agreement are the exclusive procedures for resolving any action that could otherwise be appealed to the [MSPB], with [limited exceptions]." 5 C.F.R. § 1201.3(c)(1). Thus, these collective bargaining agreements, along with their negotiated grievance procedures, constitute a "central part of the comprehensive overhaul of the civil service system provided by the CSRA." *Muniz v. United States*, 972 F.2d 1304, 1309 (Fed.Cir.1992).

Prior to its amendment in 1994, the CSRA provided that "the procedures [set out in the collective bargaining agreement] shall be the exclusive procedures for resolving grievances which fall within its coverage." 5 U.S.C. § 7121(a)(1) (1988). Thus, before the CSRA's amendment, employees with grievances covered by their collective bargaining agreement were unable to bring those claims to court. *See Carter v. Gibbs*, 909 F.2d 1452, 1455–56 (Fed.Cir.1990) (holding that under the unamended § 7121(a)(1), Internal Revenue Service employees' collective bargaining agreement precluded member employees from bringing Fair Labor Standards Act pay disputes to district court).

However, Congress subsequently amended § 7121(a)(1) to state that "the procedures [set out in the collective bargaining agreement] shall be the exclusive *administrative* procedures for resolving grievances which fall within its coverage." Pub.L. No. 103–424, 108 Stat. 4361 (1994) (emphasis added). Based on the addition of the word "administrative," the Federal Circuit held that "the 1994 amendments to the CSRA established a federal employee's right to seek a judicial remedy for *statutory* claims even if those

---

**12.** *See* 5 U.S.C. §§ 1204, 7701; 5 C.F.R. §§ 1200.1, .3.

claims could also be raised as grievances subject to the negotiated procedures in the applicable collective bargaining agreement." *Doe v. United States,* 513 F.3d 1348, 1355 (Fed.Cir.2008) (citing *Mudge v. United States,* 308 F.3d 1220, 1227 (Fed.Cir.2002); *O'Connor v. United States,* 308 F.3d 1233, 1239–40 (Fed.Cir.2002)) (emphasis added).

It was the possibility that plaintiff might be asserting a statutory claim that led this court to order supplemental briefing on the issue. As outlined above, this court concludes that plaintiff is merely asserting a breach of contract claim—namely, the breach of the settlement agreement reached between plaintiff and the PTO after she filed a formal grievance pursuant to the CBA's negotiated procedures. In essence, plaintiff is attempting to collaterally attack the exclusive remedy provided to her under the CSRA via a breach of contract claim in this court. This she cannot do. Because plaintiff's breach of contract claim rests on a settlement agreement that arose only in the context of the CSRA's integrated scheme of administrative and judicial review, this court is without jurisdiction to hear her claim. *See Bobula v. United States Dep't of Justice,* 970 F.2d 854, 858 (Fed.Cir.1992) ("Since the CSRA is an integrated scheme, and since the settlement agreement arose from this integrated scheme, the settlement agreement must be enforced within the procedures provided for in the CSRA or not at all."); *Pines Residential Treatment Center, Inc. v. United States,* 64 Fed.Cl. 307, 314–15 (2005) ("Although breach of contract claims involving settlement agreements with the government may invoke this court's Tucker Act jurisdiction, settlement agreements made in the context of an integrated scheme of administrative and judicial review may only be enforced according to the procedures provided by such an integrated scheme." (internal quotations omitted)); *see also Griswold v. United States,* 61 Fed.Cl. 458, 465 (2004) ("This court has consistently held that it lacks jurisdiction to hear claims alleging the breach of a Title VII settlement agreement due to the comprehensive statutory scheme established under Title VII of the Civil Rights Act.").

Plaintiff's case is factually indistinguishable from the case presented in *Schooling v. United States,* 63 Fed.Cl. 204 (2004). In *Schooling,* the plaintiff was a retired Internal Revenue Service ("IRS") employee. *Id.* at 204. Prior to his retirement, the IRS sought to suspend plaintiff for 30 days based on alleged disciplinary violations. *Id.* Plaintiff, his union, and the IRS then entered into a settlement agreement, providing that the IRS would reduce plaintiff's suspension to 14 days and plaintiff would retire at the end of the suspension. *Id.* at 204–05. Both plaintiff and the IRS substantially complied with the terms of the settlement agreement. *Id.* at 205. After his retirement, plaintiff filed a complaint in this court, alleging that the IRS materially breached the settlement agreement by failing to issue a decision letter as required by the CSRA.[13] *Id.* The court dismissed plaintiff's complaint for lack of jurisdiction, holding, in part, that "[plaintiff] is not entitled to enforce the settlement as a contract outside the CSRA in any other forum, including [this court]." *Id.* at 208.

Like the plaintiff in *Schooling,* the instant plaintiff is attempting to enforce her settlement agreement outside the CSRA in this court. Here, too, the CSRA precludes this court from exercising jurisdiction over plaintiff's otherwise-valid Tucker Act claim. To hold otherwise would undermine a central part of the CSRA's integrated administrative and judicial review scheme.

## IV. CONCLUSION

Even though § 1500 does not divest this court of jurisdiction to consider plaintiff's breach of contract claim, the CSRA's integrated scheme of administrative and judicial review does. Accordingly, defendant's motion to dismiss is **GRANTED.** The clerk is directed to dismiss the complaint. Each side shall bear its own costs.

**IT IS SO ORDERED.**

---

**13.** 5 U.S.C. § 7503(b)(4) provides that "[a]n employee against whom a suspension for 14 days or less is proposed is entitled to ... a written decision and the specific reasons therefor at the earliest practicable date."