Eric D. CUNNINGHAM, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 10–111 C

United States Court of Federal Claims.

(Filed December 20, 2012)

James Y. Boland, Tysons Corner, VA, for plaintiff. Melanie J. Totman and Rebecca E. Pearson, Washington, DC, of counsel.

Jessica R. Toplin, United States Department of Justice, with whom were Stuart F. Delery, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Martin F. Hockey, Jr., Assistant Director, Washington, DC, for defendant. Jacqueline Posner, Office of Personnel Management, Washington, DC, of counsel.

Breach of Settlement Agreement; Civil Service Reform Act of 1978, Pub.L. No. 95–454, 92 Stat. 1111; Tucker Act, 28 U.S.C. § 1491(a)(1) (2006); Subject Matter Jurisdiction, RCFC 12(b)(1); Res Judicata; Failure to State a Claim, RCFC 12(b)(6).

## OPINION

BUSH, Judge.

Now pending before the court is defendant's motion to dismiss, which has been

fully briefed and is ripe for a decision by the court. Because the court concludes that it has subject matter jurisdiction over the breach of contract claim set forth in the complaint, defendant's motion to dismiss the complaint pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims (RCFC) cannot be granted on that basis. The court further holds, however, that the complaint fails to state a claim upon which relief can be granted and must be dismissed under RCFC 12(b)(6). For that reason, defendant's motion to dismiss is hereby granted.

## BACKGROUND [1]

### I. Factual History

Plaintiff Eric D. Cunningham was employed as a criminal investigator in the Office of the Inspector General within the Office of Personnel Management (OPM) from February 23, 2004 until his termination on January 22, 2005. Compl. ¶¶ 5–6. Mr. Cunningham was notified of his proposed termination in a letter dated December 20, 2004. *Id.* ¶ 9. Plaintiff was terminated during his initial one-year probationary period and never progressed beyond GS–11, step 1, the level at which he was first hired by OPM. *Id.* ¶¶ 5–6.

Plaintiff then filed a timely appeal of his termination with the United States Merit Systems Protection Board (MSPB).[2] *Id.* ¶ 7. On October 27, 2005, during the second day of the administrative hearing on his appeal, plaintiff entered into a settlement agreement with OPM, under which he agreed to withdraw his MSPB appeal with prejudice. *Id.* ¶ 8, Ex. 1 ¶ 3. One of the signatories to the agreement was Timothy C. Watkins, counsel to the Inspector General at OPM. *Id.* Ex. 1 at 3.

Under the settlement agreement, OPM agreed to replace Mr. Cunningham's original Standard Form (SF) 50, which stated that he had been terminated, with a new SF–50 stating that he had resigned. *Id.* ¶ 9. OPM also agreed to remove the December 2004 termination letter, and Mr. Cunningham's response to that letter, from his personnel folder. *Id.* The settlement agreement designated the Director of Human Resources at OPM as the sole agency contact for all employment inquiries and references related to Mr. Cunningham's employment as a criminal investigator at OPM. *Id.* ¶ 10. Under the agreement, the Director of Human Resources was required to limit his responses to employment inquiries to Mr. Cunningham's date of employment and years of federal service. *Id.* The agreement further stated that "[t]he OPM agree[s] that [it] will keep the terms, amount, and facts of this Agreement completely confidential, except to the extent disclosure may be required by law, regulation, subpoena or court order." *Id.* Ex. 1 ¶ 10. Finally, the government made a one-time payment of $50,000 to Mr. Cunningham pursuant to the settlement agreement. *Id.* Ex. 1 ¶ 5.

For his part, Mr. Cunningham agreed to withdraw his MSPB appeal with prejudice, and further agreed that he would "not bring any action or proceeding in any forum against OPM, its employees, officers or agents, or their successors in their individual or official capacity, for any claim arising out of or related to the matters involved in this complaint, which occurred before the date this Agreement is signed by all parties." *Id.* Ex. 1 ¶ 4. Mr. Cunningham further agreed that he would not "disclose any information concerning this Agreement or his alleged discrimination complaint to anyone employed by or connected with OPM, including, but not limited to, any past, present, or prospective employee or applicant for employment with OPM." *Id.* Ex. 1 ¶ 10. In addition, plaintiff agreed that he would direct inquiries from any future potential employers to the Director of Human Resources at OPM. *Id.* Ex. 1 ¶ 9.

---

1. The facts recounted here are taken from the parties' submissions in this case and are undisputed. Unless otherwise noted, the court makes no findings of fact in this opinion.

2. As a probationary employee, Mr. Cunningham would not ordinarily have possessed any rights to appeal his termination to the MSPB. Because he had advanced a non-frivolous allegation of discrimination based on his marital status, however, he was entitled to those protections. *See* Compl. Ex. 2 at 2; *Ellis v. Dep't of Treasury,* 81 M.S.P.R. 6, 11 (1999).

In July 2006, plaintiff was offered a position as a background investigator with the United States Investigation Service (USIS), contingent upon satisfactory results from a comprehensive background investigation.[3] *Id.* ¶ 12. Following an initial background clearance from USIS in February 2007, Mr. Cunningham was informed that he would join the next training class in October 2007. *Id.* ¶ 13. USIS also informed plaintiff that it anticipated receiving a new contract from OPM, and that OPM required a separate background clearance for its contractors. *Id.* Mr. Cunningham agreed to an investigation by OPM, met with the investigator, and was instructed to report for duty on October 22, 2007. *Id.* Mr. Cunningham reported for training in Maryland on that date. *Id.*

On October 26, 2007, less than one week after plaintiff had commenced his initial training, the general manager of USIS informed Mr. Cunningham that he was being suspended without pay, effective immediately, at the direction of OPM's security office. *Id.* ¶ 14. On October 28, 2007, plaintiff met with his investigator, who informed him that the background investigation had revealed information about his termination by OPM, his subsequent appeal to the MSPB, the hearing on the MSPB appeal, and the settlement agreement. *Id.* ¶ 15. Plaintiff refused to sign a waiver allowing the background investigator to review his entire personnel file, believing that such a waiver would have violated the confidentiality provisions of the settlement agreement. *Id.* ¶ 16.

Mr. Cunningham remained suspended without pay until February 1, 2008, when he was terminated by USIS due to the results of the background investigation conducted by OPM. *Id.* ¶ 17. Following his termination from USIS, plaintiff requested a copy of his personnel file from OPM. *Id.* ¶ 18. The file contained a document which established that one current OPM employee, Mr. Watkins, and one former OPM employee, Charles Focarino, had discussed Mr. Cunningham's termination and subsequent appeal to the

MSPB with the background investigator in violation of the settlement agreement. *Id.*

On March 24, 2008, Mr. Cunningham filed a petition with the MSPB to enforce his settlement agreement with OPM. *Id.* ¶ 19. On July 16, 2008, an administrative judge in the MSPB's New York field office found that OPM had breached the settlement agreement. *Id.* Because she determined that OPM's breach of the settlement agreement was material, the administrative judge also noted that plaintiff would normally be entitled to choose between enforcing the terms of the agreement or rescinding that agreement and reinstating his original appeal before the MSPB. *Id.* Ex. 2 at 9. The administrative judge explained that enforcement of the agreement would not be an effective remedy in plaintiff's case because the breach involved a non-disclosure provision, and the MSPB was not authorized to award damages for breach of a settlement agreement. *Id.* For those reasons, the administrative judge recommended that the MSPB vacate its earlier order dismissing Mr. Cunningham's appeal as settled, and reinstate that appeal before the Board. *Id.* Finally, the administrative judge noted that Mr. Cunningham would be required to reimburse the government for the $50,000 payment made to him under the settlement agreement. *Id.*

On January 23, 2009, the MSPB issued an order adopting the recommendations of the administrative judge and returned the appeal to the New York field office for further proceedings. *See id.* Ex. 3. On February 9, 2009, plaintiff informed the administrative judge that he did not intend to proceed with his appeal and did not want that appeal to be reinstated. Def.'s Mot.App. at A64–A65. For that reason, the administrative judge dismissed Mr. Cunningham's petition for enforcement on February 10, 2009. *Id.* at A65.

## II. Procedural History

Mr. Cunningham filed his complaint in this court nearly three years ago, on February 19, 2010.[4] On May 19, 2011, the court

---

3. USIS is a private company that contracts with various government agencies, including OPM, to perform background investigations. Compl. ¶ 12.

4. With leave of the court, Mr. Cunningham's original attorney of record withdrew from this case on May 17, 2010, and plaintiff thus proceeded *pro se* from that date until his current attor-

stayed all proceedings in this case pending a decision from the United States Court of Appeals for the Federal Circuit in *Holmes v. United States*, 657 F.3d 1303 (Fed.Cir.2011). The court determined that the Federal Circuit's resolution of the appeal in that case, which involved a claim for an alleged breach of an agreement to settle an action under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e to 2000e–17 (2006), might be relevant to the issues before the court in this case. In his complaint in this case, plaintiff asserts that the court has subject matter jurisdiction over his suit under the Tucker Act, 28 U.S.C. § 1491(a)(1) (2006).

Defendant filed a motion to dismiss the complaint on December 28, 2011.[5] In that motion, defendant advances two principal arguments. First, defendant asserts that the MSPB possesses exclusive jurisdiction over personnel disputes between government agencies and their employees under the Civil Service Reform Act of 1978 (CSRA), Pub.L. No. 95–454, 92 Stat. 1111 (codified as amended in scattered sections of 5 U.S.C.), and that the MSPB's exclusive jurisdiction includes the enforcement of settlement agreements. In the alternative, defendant argues that, even if this suit is within the court's jurisdiction, it is nonetheless barred under the legal doctrine of res judicata. Under either scenario, according to the government, this suit must be dismissed.

Plaintiff responded to defendant's motion to dismiss on January 30, 2012. Mr. Cunningham first argues that nothing in the CSRA deprives this court of jurisdiction over suits seeking money damages for breach of an MSPB settlement agreement. On the contrary, according to plaintiff, such suits fall squarely within the reach of this court's subject matter jurisdiction under the Tucker

Act. Plaintiff also argues that defendant has failed to demonstrate that res judicata applies in this case. In that regard, Mr. Cunningham asserts that res judicata is inapplicable here for four reasons. First, the MSPB did not have jurisdiction over his claim for damages. Second, this suit is based on different operational facts than the earlier proceeding before the MSPB. Third, the MSPB never rendered a final judgment on his earlier claim. Finally, according to Mr. Cunningham, the parties agreed in the settlement agreement that plaintiff would be free to pursue a suit for money damages in this court notwithstanding any earlier action seeking enforcement of the agreement by the MSPB.

On March 15, 2012, defendant filed a reply in support of its motion to dismiss the complaint, which largely reiterates the arguments set forth in the government's initial motion and responds to the arguments raised by plaintiff on the issue of res judicata. On October 11, 2012, this case was transferred to the undersigned pursuant to RCFC 40.1(c).

## DISCUSSION

### I. Standards of Review

#### A. RCFC 12(b)(1)

In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), this court must presume all undisputed factual allegations to be true and must construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800, 814–15, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir.1988). The relevant issue in a motion to

neys entered their initial appearance in this case on October 21, 2011. It is the court's understanding that Mr. Cunningham's current attorneys accepted this matter on a *pro bono* basis. The court commends Mr. Boland, Ms. Totman, and Ms. Pearson for their able representation of plaintiff in this matter.

5. To be more precise, defendant filed a motion for leave to file its motion to dismiss on December 28, 2011, and the court granted that motion

for leave on January 31, 2012, one day after plaintiff had responded to the not-yet-authorized motion to dismiss. In that same order, the court also lifted the stay of proceedings to allow the parties to complete briefing on defendant's motion to dismiss. The court will deem defendant's motion to dismiss to have been filed on December 28, 2011, and the response to that motion to have been filed on January 30, 2012.

dismiss under RCFC 12(b)(1) " 'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Patton v. United States,* 64 Fed.Cl. 768, 773 (2005) (quoting *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683). The plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1377 (Fed.Cir.1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)), and must do so by a preponderance of the evidence, *Reynolds,* 846 F.2d at 748 (citations omitted). The court may look at evidence outside of the pleadings in order to determine its jurisdiction over a case. *Martinez v. United States,* 48 Fed.Cl. 851, 857 (2001) (citing *RHI Holdings, Inc. v. United States,* 142 F.3d 1459, 1461–62 (Fed.Cir. 1998); *Rocovich v. United States,* 933 F.2d 991, 993 (Fed.Cir.1991)), aff'd in relevant part, 281 F.3d 1376 (Fed.Cir.2002). "Indeed, the court may, and often must, find facts on its own." *Id.* If jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(h)(3).

## B. RCFC 12(b)(6)

 It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States,* 295 F.3d 1252, 1257 (Fed. Cir.2002). When considering a motion to dismiss under this rule, "the allegations of the complaint should be construed favorably to the pleader." *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is warranted under RCFC 12(b)(6). *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 558, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). To survive a motion to dismiss for failure to state a claim, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555, 127 S.Ct. 1955. While a complaint is not required to contain detailed factual allegations, it must provide "enough facts to state a claim for relief that is plausible on its face." *Id.* at 570, 127 S.Ct.

1955. In order to meet the requirement of facial plausibility, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

## II. Analysis

In its motion, defendant advances two independent grounds for dismissing the complaint in this case. First, the government argues that this court does not possess subject matter jurisdiction over Mr. Cunningham's breach claim because the MSPB has exclusive jurisdiction over such claims under the CSRA. In addition, the government asserts that even if this court does have jurisdiction over this suit, the claim set forth in the complaint has already been litigated to a final judgment in another forum and is therefore barred under the doctrine of res judicata. For the reasons discussed below, the court concludes that it does possess jurisdiction over Mr. Cunningham's claim, but further holds that the claim is res judicata and thus barred in this court.

### A. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendant has moved to dismiss the complaint under RCFC 12(b)(1) on the asserted basis that the enforcement of MSPB settlement agreements falls within the exclusive jurisdiction of the MSPB under the CSRA. Because the court disagrees, defendant's motion cannot be granted on that basis.

#### 1. This Court Possesses Subject Matter Jurisdiction over Claims for an Alleged Breach of a Settlement Agreement under the Tucker Act

Under the Tucker Act, this court possesses subject matter jurisdiction over claims based "upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). The term "contract," as it is used in the Tucker Act, includes settlement agreements. *See Greco v. Dep't of Army,* 852 F.2d 558, 560 (Fed.Cir.1988) ("It is axiomatic that a settlement agreement is a contract."). As a

general matter, then, a suit seeking money damages for the alleged breach of a settlement agreement falls within this court's jurisdiction under the Tucker Act.

Despite this general pronouncement, "[t]he government's consent to suit under the Tucker Act does not extend to every contract." *Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed.Cir. 2008). The court would not, for example, have jurisdiction over a claim alleging the breach of a contract that expressly provides that damages are not an available remedy for its breach. Similarly, this court does not possess jurisdiction over claims for alleged breaches of written contracts that involve the administration of the criminal justice system, such as criminal plea agreements, even though such agreements might, as express contracts, otherwise fall within the reach of the Tucker Act. *See, e.g., Sanders v. United States*, 252 F.3d 1329, 1335 (Fed.Cir. 2001). Most relevant and applicable here, the Federal Circuit has noted that "a contract will not fall within the purview of the Tucker Act if Congress has placed jurisdiction over it elsewhere." *Massie v. United States*, 166 F.3d 1184, 1188 (Fed.Cir.1999); *see Pines Residential Treatment Ctr., Inc. v. United States*, 64 Fed.Cl. 307, 314–15 (2005) ("Although breach of contract claims involving settlement agreements with the government may invoke this court's Tucker Act jurisdiction, settlement agreements made in the context of an 'integrated scheme of administrative and judicial review' may only be enforced according to the procedures provided by such an 'integrated scheme.'") (citations omitted). In its motion to dismiss, defendant asserts that Congress has in fact placed exclusive jurisdiction over claims for breach of an MSPB settlement agreement in another forum.

**2. The Civil Service Reform Act Does Not Divest this Court of Jurisdiction over a Settlement Agreement Simply Because the Agreement Settled an Appeal before the Merit Systems Protection Board**

■ In most circumstances, as discussed above, this court has jurisdiction over claims for money damages asserting a breach of a written settlement agreement. However, when Congress has conferred exclusive jurisdiction over such claims upon an administrative agency or another court, this court may not exercise such jurisdiction, even when the claim would otherwise fall within the Tucker Act. *Cf. Gallo v. United States*, 529 F.3d 1345, 1352 (Fed.Cir.2008) (noting that when a particular type of legal action is within the MSPB's jurisdiction under the CSRA, "the Court of Federal Claims lacks jurisdiction over such an action even assuming that it would otherwise constitute a valid Tucker Act claim"). Here, the court must determine whether the MSPB's exclusive jurisdiction over personnel disputes between agencies and their employees extends to suits seeking money damages for the breach of an agreement to settle such a dispute. For the reasons set forth below, the court holds that it does not.

**a. The Civil Service Reform Act of 1978**

The Supreme Court has explained that "[a] leading purpose of the CSRA was to replace the haphazard arrangements for administrative and judicial review of personnel action, part of the 'outdated patchwork of statutes and rules built up over almost a century' that was the civil service system." *United States v. Fausto*, 484 U.S. 439, 444, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988) (quoting S.Rep. No. 95–969, at 3 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2723). When it enacted the CSRA, Congress "replaced the patchwork system with an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Id.* at 445, 108 S.Ct. 668 (citation omitted).

Under the CSRA, the MSPB has exclusive jurisdiction over most personnel disputes between federal employees and their employing agencies. *See, e.g., Fausto*, 484 U.S. at 454, 108 S.Ct. 668 ("[W]e find that under the comprehensive and integrated review scheme of the CSRA, the Claims Court (and any other court relying on Tucker Act jurisdiction) is not an 'appropriate authority' to review an agency's personnel determination

[under the Back Pay Act, 5 U.S.C. § 5596 (2006) ]."); *Worthington v. United States,* 168 F.3d 24, 26 (Fed.Cir.1999) ("This court has noted that *Fausto* deprives the Court of Federal Claims of jurisdiction over personnel actions covered by the CSRA.") (citations omitted). In sum, when the MSPB has exclusive jurisdiction over a personnel matter, this court does not.

However, the fact that this court may not exercise jurisdiction over personnel disputes covered by the CSRA does not necessarily lead to the conclusion that this court may not exercise jurisdiction over suits seeking money damages for the breach of an agreement to settle a dispute that is within the exclusive jurisdiction of the MSPB. Because the court believes that there are several important similarities between the comprehensive and integrated schemes established by the CSRA and Title VII, an examination of the Federal Circuit's approach to the enforcement of Title VII settlement agreements is useful in determining whether a suit for damages based on the alleged breach of an MSPB settlement agreement is within this court's jurisdiction.

**b. Title VII Settlement Agreements**

In terms of its effect on the jurisdiction of this court, the CSRA mirrors Title VII in many respects. In much the same way as the CSRA established a "comprehensive and integrated review scheme" for the resolution of federal personnel disputes, *see Fausto,* 484 U.S. at 454, 108 S.Ct. 668, Title VII established an "exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *Brown v. Gen. Servs. Admin.,* 425 U.S. 820, 829, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). Further, in the same way that the CSRA vests exclusive jurisdiction over federal personnel disputes with the MSPB, Title VII places exclusive jurisdiction over claims of employment discrimination with the Equal Employment Opportunity Commission (EEOC) and the district courts. *See generally* 42 U.S.C. § 2000e–5. When Congress has vested exclusive jurisdiction over a particular type of claim in the MSPB, EEOC, or the district courts, this court cannot exercise jurisdiction over such claims under the Tucker Act. In

light of these similarities, an examination of the scope of this court's jurisdiction over agreements to settle Title VII claims is instructive in determining this court's jurisdiction over claims alleging a breach of an MSPB settlement agreement.

In a number of earlier cases, this court held that agreements entered to settle employment discrimination claims under Title VII were not within its jurisdiction under the Tucker Act. In *Fausto v. United States,* 16 Cl.Ct. 750, 752–54 (1989), for example, this court noted that Title VII "is the comprehensive, exclusive, and preemptive remedy for federal employees alleging discrimination." 16 Cl.Ct. at 753 (citations omitted). The court first explained that Title VII vested exclusive jurisdiction over federal employment discrimination claims in the district courts. Next, the court opined that Title VII settlement agreements are the "direct result" of Title VII claims. *Id.* at 753. For those reasons, the court concluded that it "cannot assume jurisdiction to review a Title VII settlement" because such jurisdiction was "granted by Congress to the federal district courts." *Id.*

For several years, this court routinely dismissed breach of contract claims involving Title VII settlement agreements as beyond its subject matter jurisdiction. *See Griswold v. United States,* 61 Fed.Cl. 458, 464–65 (2004); *Taylor v. United States,* 54 Fed.Cl. 423, 425–26 (2002); *Mitchell v. United States,* 44 Fed.Cl. 437, 438–39 (1999); *Lee v. United States,* 33 Fed.Cl. 374, 378–80 (1995). In each of those cases, this court held that enforcement of such settlement agreements was not within its subject matter jurisdiction because "[t]he presence of a comprehensive, precisely-drawn statutory scheme providing for judicial review in another forum will preempt Tucker Act jurisdiction in this court." *Lee,* 33 Fed.Cl. at 378.

Nonetheless, there was also a minority view on this court, which held that suits seeking damages for the breach of Title VII settlement agreements were not covered by the comprehensive scheme for the resolution of employment discrimination claims established by Title VII. *See Taylor v. United States,* 73 Fed.Cl. 532, 541–45 (2006); *West-*

*over v. United States,* 71 Fed.Cl. 635, 638–39 (2006).[6] In reaching that outcome, this court in *Taylor* and *Westover* based its analysis on the decision of the Supreme Court in *Kokkonen v. Guardian Life Insurance Co. of America,* 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), and the Federal Circuit's decision in *Massie v. United States,* 166 F.3d 1184 (Fed.Cir.1999).

In *Kokkonen,* 511 U.S. at 375, 114 S.Ct. 1673, the Supreme Court emphasized the distinction between a claim alleging the breach of a settlement agreement, on the one hand, and the underlying legal claim that the agreement settled, on the other:

> [T]he facts underlying respondent's dismissed claim for breach of agency agreement and those underlying its claim for breach of settlement agreement have nothing to do with each other; it would neither be necessary nor even particularly efficient that they be adjudicated together. No case of ours asserts, nor do we think the concept of limited federal jurisdiction permits us to assert, ancillary jurisdiction over any agreement that has as part of its consideration the dismissal of a case before a federal court.

*Id.* at 380, 114 S.Ct. 1673. In short, under *Kokkonen,* a claim for breach of a settlement agreement and the underlying claim the agreement settled are distinct, and jurisdiction over one neither confers nor precludes jurisdiction over the other. See *id.* at 379, 114 S.Ct. 1673 ("Enforcement of the settlement agreement, . . . whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction.").

In *Massie,* 166 F.3d at 1184, the Federal Circuit held that a claim for damages under the Military Claims Act (MCA), 10 U.S.C. §§ 2731–2738 (2006), was distinct from a suit

to enforce an agreement to pay a claim made under the MCA, and that the latter was within this court's jurisdiction even though the former was not. While claims under the MCA were not subject to judicial review in any forum, the Federal Circuit concluded that an action to enforce the government's agreement to pay such a claim did not require the court to review the underlying claim itself and was therefore within this court's jurisdiction under the Tucker Act.

Subsequently, in its decision in *Holmes v. United States,* 657 F.3d 1303 (Fed.Cir.2011), the Federal Circuit endorsed what was then the minority view of this court—*i.e.,* that a claim for the alleged breach of a Title VII settlement agreement was in fact within the jurisdiction of this court under the Tucker Act, even though Title VII established an integrated and comprehensive scheme for the resolution of claims by federal employees alleging employment discrimination within the EEOC and the district courts:

> [A]lthough the [settlement agreements] arose out of Title VII litigation, Mr. Holmes's suit for breach of contract is just that: a suit to enforce a contract with the government. *See generally Kokkonen,* 511 U.S. 375 [114 S.Ct. 1673]. In sum, we agree with the parties and hold that settlement agreements resolving Title VII disputes are not *per se* beyond the Tucker Act jurisdiction of the Court of Federal Claims.

657 F.3d at 1312.[7]

In pursuing a claim under the Tucker Act based on a statute, regulation, or constitutional provision, a plaintiff must demonstrate that the substantive law upon which it relies may be fairly interpreted as mandating the payment of money by the government. *See, e.g., United States v. Navajo Nation,* 556 U.S. 287, 290, 129 S.Ct. 1547, 173 L.Ed.2d 429 (2009); *United States v. Testan,* 424 U.S.

---

**6.** The United States Court of Appeals for the District of Columbia Circuit has expressed the same view as well. *See Greenhill v. Spellings,* 482 F.3d 569, 572–76 (D.C.Cir.2007) (holding that the Court of Federal Claims—and not the district courts—had exclusive jurisdiction over claims alleging a breach of a Title VII settlement agreement and seeking more than $10,000 in damages).

**7.** In *Holmes,* the government did not contend that suits for damages based on an alleged breach of a Title VII settlement agreement were always beyond the jurisdiction of this court. Instead, the government argued that the plaintiff had failed to identify a money-mandating source of law for purposes of this court's jurisdiction under the Tucker Act.

392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). However, when the substantive source of law is an express or implied contract, the money-mandating requirement does not ordinarily apply. *See Bank of Guam v. United States,* 578 F.3d 1318, 1325 (Fed.Cir.2009) ("A well pleaded allegation of a breach of either an express or implied-in-fact contract is sufficient to overcome challenges to jurisdiction.") (citing *Trauma Serv. Grp. v. United States,* 104 F.3d 1321, 1325 (Fed.Cir.1997)); *see also United States v. Winstar Corp.,* 518 U.S. 839, 885, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996) (noting that "damages are always the default remedy for breach of contract").

In *Holmes,* however, the Federal Circuit held that, due to the nature of a Title VII settlement agreement, any plaintiff seeking damages under such an agreement must establish "that the agreement[ ] could fairly be interpreted as contemplating money damages in the event of breach." 657 F.3d at 1315. Notwithstanding the general presumption that damages are an available remedy for breach, the Federal Circuit noted that "settlement of a Title VII action involving the government could involve purely nonmonetary relief—for example, a transfer from one agency office to another." *Id.* (footnote omitted). The Federal Circuit concluded that the plaintiff in *Holmes* had demonstrated that the settlement agreements in that case could be fairly interpreted as contemplating money damages in the event of breach, and it therefore reversed this court's dismissal of the complaint for lack of jurisdiction.

In sum, the Federal Circuit held in *Holmes* that suits for breach of a Title VII settlement agreement are not beyond this court's jurisdiction for the mere reason that the EEOC and district courts possess exclusive jurisdiction over the underlying claims of employment discrimination that such agreements settle. In addition, the Federal Circuit held that—in contrast to most types of contracts—an agreement to settle a claim under Title VII is not entitled to an automatic presumption that damages are an available remedy for its breach. Rather, a plaintiff who seeks damages for such a breach must demonstrate that the settlement agreement can be fairly interpreted as mandating damages as a remedy.

**c. MSPB Settlement Agreements**

There is no question that this court has jurisdiction over claims for money damages based on the alleged breach of an express contract, including a contract that settles a legal dispute. 28 U.S.C. § 1491(a)(1); *Greco,* 852 F.2d at 560. On the other hand, it is equally clear that this court has no jurisdiction over personnel disputes between the federal government and its employees. Those disputes fall within the exclusive jurisdiction of the MSPB under the "comprehensive and integrated review scheme of the CSRA." *Fausto,* 484 U.S. at 454, 108 S.Ct. 668. In this case, the court must determine whether it has subject matter jurisdiction over an express contract that was executed for the purpose of settling a personnel dispute within the exclusive jurisdiction of the MSPB. In light of the substantial similarities between the respective legal frameworks established by the CSRA and Title VII, the court concludes that the holding of the Federal Circuit in *Holmes*—*i.e.,* that this court may exercise jurisdiction over a suit seeking damages for the alleged breach of a Title VII settlement agreement—applies with equal force in the context of MSPB settlement agreements.

The court first notes that it has previously held, in at least three other cases, that suits for damages based on the alleged breach of an MSPB settlement agreement are not within this court's jurisdiction. *See Berry v. United States,* 86 Fed.Cl. 750 (2009); *Schooling v. United States,* 63 Fed.Cl. 204 (2004); *Good v. United States,* 23 Cl.Ct. 744 (1991). For a number of reasons, those cases do not control the outcome in this case. First, decisions in other cases before this court are not binding in this proceeding. *See W. Coast Gen. Corp. v. Dalton,* 39 F.3d 312, 315 (Fed. Cir.1994) ("Court of Federal Claims decisions, while persuasive, do not set binding precedent for separate and distinct cases in that court.") (citations omitted). Second, two of those cases—*Berry* and *Schooling*—are distinguishable on the facts in that the plaintiff in each of those cases requested back pay rather than damages flowing from the al-

leged breach. Finally, all three of those cases pre-date the Federal Circuit's decision in *Holmes*, which the court finds to be particularly relevant to the issues presented in this case.[8]

Defendant argues that MSPB settlement agreements are covered by the comprehensive and integrated scheme established by the CSRA, and that such agreements may be enforced only by the MSPB. In support of that argument, and in addition to the three cases noted above, defendant principally relies on three decisions from the Federal Circuit that appear to hold that this court does not possess jurisdiction to hear claims alleging a breach of an MSPB settlement agreement. The government asserts that *Holmes* should not be read to apply outside of the Title VII context, and further argues that the panel in *Holmes* could not, in any event, overrule the earlier Federal Circuit decisions upon which the government relies in this case. The government is correct that in the event of a direct conflict between *Holmes* and those earlier cases, the earlier cases would control. *See Newell Cos. v. Kenney Mfg. Co.*, 864 F.2d 757, 765 (Fed.Cir.1988) ("This court has adopted the rule that prior decisions of a panel of the court are binding precedent on subsequent panels unless and until overturned *in banc*. Where there is a direct conflict, the precedential decision is the first."). The court concludes, however, that there is no direct conflict between *Holmes* and the three earlier panel decisions cited by the government. Further, the court also holds that each of those cases is distinguishable from the present case.

In *McClary v. United States*, 775 F.2d 280 (Fed.Cir.1985), a federal agent requested a transfer to another office, which was granted subject to his agreement to agree to a reduction in grade. The employing agency also refused to reimburse the plaintiff for moving expenses, allegedly in violation of a federal statute. Following an unsuccessful request for an inquiry by the MSPB's Special Counsel, the plaintiff filed suit in this court re-

questing back pay and moving expenses. Finding that the claim for back pay was within the exclusive jurisdiction of the MSPB, this court dismissed that claim, and the Federal Circuit affirmed, explaining that "[w]here an employee is provided a means of redress under the CSRA, that is, an appeal to the Board, the employee does not have an independent cause of action in the Claims Court." *Id.* at 282 (citation omitted). *McClary* did not involve a claim for money damages based upon an alleged breach of a settlement agreement; rather, it involved the same issue subsequently addressed by the Supreme Court in *Fausto*: whether a federal employee may seek back pay in this court based on an adverse personnel action that is within the exclusive jurisdiction of the MSPB. *McClary* is not in direct conflict with *Holmes*, nor does it address the issue now before this court.

In *Amin v. Merit Systems Protection Board*, 951 F.2d 1247 (Fed.Cir.1991), the Federal Circuit addressed whether the MSPB or the employing agency was the proper respondent in an appeal of an MSPB decision denying a petition for the enforcement of a settlement agreement. In reaching that issue, the Federal Circuit noted that the MSPB's "jurisdiction over settlement agreements is inextricably linked to its jurisdiction of underlying personnel actions appealed to the Board." *Id.* at 1253. However, the issue in *Amin* was not whether this court could properly exercise jurisdiction over a claim for damages based on an alleged breach of an MSPB settlement agreement; rather, the court in that case was required to examine "whether the denial of a petition for review of a settlement agreement is a decision on the merits of the underlying personnel action or a decision raising pure jurisdictional or procedural questions." *Id.* at 1252. In sum, *Amin* did not address the issue now before the court, nor is it inconsistent with *Holmes*.

8. This court's decision in *Good*—the only case that cannot be clearly distinguished on the facts—also pre-dated the Supreme Court's decision in *Kokkonen*, which held that the jurisdictional basis of an action to enforce a settlement agreement is separate and distinct from the jurisdictional basis of the underlying legal action settled by that agreement. 511 U.S. at 380, 114 S.Ct. 1673.

In *Bobula v. U.S. Department of Justice,* 970 F.2d 854 (Fed.Cir.1992), the plaintiff, a Department of Justice (DOJ) attorney in the Antitrust Division in Cleveland, Ohio, had filed a number of grievances against the Department, and subsequently entered into a settlement agreement to resolve those grievances. Under the settlement agreement, DOJ agreed to transfer the plaintiff from the Antitrust Division to the United States Attorney's office in Cleveland, Ohio. Approximately five years after her transfer to that office, plaintiff was transferred to the U.S. Attorney's office in Akron, Ohio. The plaintiff filed suit against the government in district court under the Little Tucker Act, 28 U.S.C. § 1346(a)(2) (2006), and the mandamus statute, 28 U.S.C. § 1361 (2006), alleging that her transfer breached the settlement agreement. The district court dismissed the complaint for lack of subject matter jurisdiction, and the Federal Circuit affirmed.

The Federal Circuit first observed that the CSRA "cannot be read to repeal other statutes unless it does so explicitly[,]" and that "if another statute independently and specifically provides an avenue of relief in a case that would otherwise be governed exclusively by the CSRA, that statute must be given effect if the CSRA did not explicitly repeal it." *Bobula,* 970 F.2d at 857. Next, the court held that nothing in the CSRA could be read as an express repeal of either the Little Tucker Act or the mandamus statute. *Id.* However, the court nonetheless determined that the plaintiff sought review of an underlying personnel action, and further held that "[n]either the Little Tucker Act nor the mandamus statute explicitly provides for review of an underlying personnel action." *Id.*

The Federal Circuit noted that the plaintiff in *Bobula* had not requested damages in her district court suit. Rather, the plaintiff

in essence, seeks review of her reassignment from Cleveland to Akron. She wants to have this personnel action declared invalid under a theory that her settlement agreement removed the U.S. Attorney's statutory power to reassign her within the Northern District of Ohio. She wants either the district court or this court to order the U.S. Attorney ... to return her to Cleveland.

*Id.* at 857–58; see also *id.* at 859 ("Since Bobula did not request monetary relief in the trial forum, we may not address her request here.").

The government places particular emphasis on the following passage in the Federal Circuit's *Bobula* decision:

Since the CSRA is an integrated scheme, and since the settlement agreement arose from this integrated scheme, the settlement agreement must be enforced within the procedures provided for in the CSRA or not at all. Therefore, the settlement agreement may not be enforced as a contract outside the CSRA in any forum, including the district court under the Little Tucker Act.

*Id.* at 858. Standing alone, that statement might appear to foreclose this court's jurisdiction over claims alleging a breach of an MSPB settlement agreement. When the quoted passage is viewed in context, however, it is clear that the court's decision in *Bobula* turned on the fact that the plaintiff in that case had essentially asked the district court to review the merits of a personnel decision, and had requested that the court order a federal agency to transfer one of its employees to a different office. [9] In *Holmes,* the Federal Circuit explained that the type of

**9.** In *Massie,* the Federal Circuit distinguished *Bobula* on the basis that resolution of the breach of contract claim in that case would have required the court to examine the merits of the underlying personnel dispute that the agreement settled:

In *Bobula,* the petitioner brought a breach of contract action under the Little Tucker Act in the district court, alleging that the government breached an agreement that settled her claim under the [CSRA] by reassigning her to another office. We explained that "any relief [under

the contract] would require review of the underlying personnel action (reassignment ...) [because] [w]hether or not the settlement agreement by its terms prevents the U.S. Attorney from reassigning Bobula is a personnel action." As a result, we held that the CSRA precludes review of the agreement under the Little Tucker Act. In [*Bobula*], therefore, disposition of the contract claim would require review of subject matter reserved to another body.

166 F.3d at 1189 (internal citations omitted).

relief sought by the plaintiff in *Bobula* might not be within this court's jurisdiction under the Tucker Act because it was not based on a money-mandating provision in the settlement agreement. *See Holmes*, 657 F.3d at 1315 ("[W]e readily accept that settlement of a Title VII action involving the government could involve purely nonmonetary relief—for example, a transfer from one agency office to another."). In short, *Holmes* is not in conflict with *Bobula*, and the latter is distinguishable from the case now before the court.

▮ In sum, whether this court may exercise jurisdiction over a suit for the enforcement of an MSPB settlement agreement will depend on the nature of that agreement and the provisions that are alleged to have been breached. If the settlement agreement can be fairly interpreted as mandating the payment of money by the government, then a suit for an alleged breach of that agreement may be maintained in this court. On the other hand, this court cannot exercise jurisdiction over the alleged breach of an MSPB settlement agreement when it would be necessary for the court to review the merits of the underlying personnel action or to encroach upon the MSPB's exclusive jurisdiction over disputes between federal agencies and their employees.

In determining whether the government has breached the terms of the settlement agreement in this case, this court would not be required to examine the merits of the underlying personnel dispute between plaintiff and OPM. Plaintiff does not challenge his termination in his suit. In contrast to the plaintiff in *Bobula*, moreover, Mr. Cunningham has not requested specific performance or any other type of injunctive or declaratory relief that might require the court to encroach upon the exclusive jurisdiction conferred upon the MSPB under the CSRA.

In *Holmes*, the Federal Circuit concluded that the settlement agreement in that case was money-mandating due to the nature of the obligations it imposed:

> We think that, in the context of the two agreements, the purpose of documenting and expunging Mr. Holmes's record clearly was to prevent Mr. Holmes from being denied future employment based on his record as the Navy maintained it prior to the agreements. In short, the agreements inherently relate to monetary compensation through relationship to Mr. Holmes's future employment. Further, there is no language in the agreements indicating that the parties did not intend for money damages to be available in the event of breach.

657 F.3d at 1316.

In this case, the government agreed to make changes to Mr. Cunningham's personnel folder—replacing his SF–50 with a new one, removing the letter concerning his termination, and removing his response to that letter—and agreed to strict confidentiality with respect to Mr. Cunningham's termination, his subsequent appeal to the MSPB, and his settlement agreement with the government. OPM also agreed that, when communicating with potential employers, it would limit its disclosure of information about Mr. Cunningham to his date of employment and total years of federal service. The clear purpose of those obligations was to ensure that Mr. Cunningham's ability to secure future employment (by which plaintiff obviously expected to earn money) would not be harmed by his dispute with OPM. In addition, the settlement agreement did not expressly foreclose money damages as a remedy in the event of a breach by the government. For those reasons, the court concludes that Mr. Cunningham has identified a money-mandating source of law for purposes of this court's jurisdiction under the Tucker Act.

The government notes that the MSPB is authorized, under its regulations, to ensure compliance with settlement agreements. *See* 5 C.F.R. § 1201.41(c)(2)(i) (2012) ("If the parties offer the [settlement] agreement for inclusion in the record, and if the judge approves the agreement, it will be made a part of the record, and the Board will retain jurisdiction to ensure compliance with the agreement."). However, that authority does not necessarily remove suits seeking damages for an alleged breach of an MSPB settlement agreement from this court's jurisdiction. The EEOC possesses enforcement authority with respect to Title VII settlement agree-

ments that is quite similar to that enjoyed by the MSPB, *see* 29 C.F.R. § 1614.504(a) (2012), but the Federal Circuit has held that such authority does not deprive this court of subject matter jurisdiction over suits seeking damages for an alleged breach of a Title VII settlement agreement. *See Holmes*, 657 F.3d at 1316 ("Without diminishing the force of this regulation, we see no reason for § 1614.504(a) to preclude a suit for money damages in the event of breach that is separate from, or in addition to, the relief the regulation provides.").

For all of the foregoing reasons, this court holds that it is not categorically prohibited from exercising jurisdiction over suits seeking money damages based upon the alleged breach of an MSPB settlement agreement. In this particular case, moreover, the court holds that Mr. Cunningham's settlement agreement with OPM may be fairly interpreted as mandating the payment of damages by the government in the event of a breach by the government. Finally, the court's review of the merits of this suit would not require the court to examine the underlying personnel dispute that the agreement settled, nor would it require the court to encroach upon the exclusive jurisdiction of the MSPB in awarding relief. In short, the court holds that it possesses subject matter jurisdiction over Mr. Cunningham's suit. However, for the reasons set forth below, the court further holds that the suit must be dismissed for failure to state a claim upon which relief can be granted.

### B. Motion to Dismiss for Failure to State a Claim

■ In addition to its jurisdictional challenge, the government argues that the claim advanced by Mr. Cunningham is barred under principles of res judicata.[10] The Supreme Court has explained that under the doctrine of res judicata, also known as claim preclusion, "[a] final judgment on the merits

of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *See Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). In order for res judicata to apply here, the government must demonstrate "that: (1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first." *Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed.Cir.2003) (citations omitted). This court reviews motions to dismiss based on res judicata under the standards of RCFC 12(b)(6). *See Chisolm v. United States*, 82 Fed.Cl. 185, 193 (2008).

■ Plaintiff asserts that this suit is not barred by res judicata, and he advances a number of arguments in support of that assertion. Each of Mr. Cunningham's arguments, however, is ultimately based on a single, untenable contention: that his cause of action is not one for breach of contract, but one for "money damages." The court disagrees with that characterization of Mr. Cunningham's cause of action and holds that this action is barred as res judicata for the reasons set forth below.

### 1. The Parties in this Suit Are Identical to the Parties that Appeared before the MSPB in the Earlier Proceeding

There is no dispute that the parties in this suit are the exact same parties that appeared before the MSPB when Mr. Cunningham sought to enforce the terms of the settlement agreement in that forum. While the named defendant in this suit is the United States, rather than OPM, that is a distinction without a difference because the United States is the only proper defendant in this court, and there is no question that OPM is the party

---

**10.** In its reply, the government accuses Mr. Cunningham of "attempt[ing] to confuse the issue before this Court by arguing that the Government is collaterally estopped from relitigating whether it breached the settlement agreement." Def.'s Reply at 13 n. 6. The court notes that it was the government—and not plaintiff—which

raised the issue of collateral estoppel in its motion to dismiss. *See* Def.'s Mot. at 13–14. The court further notes that, if issue preclusion were applicable in this case, the doctrine would apply against the government—and not plaintiff—as Mr. Cunningham has correctly asserted here.

that, according to Mr. Cunningham, breached the agreement.

## 2. The Earlier Proceeding before the MSPB Resulted in a Judgment on the Merits

Mr. Cunningham further argues that the MSPB's resolution of the breach issue was not a "final judgment on the merits" because his action in that forum was dismissed on jurisdictional grounds. That argument mischaracterizes the nature of the enforcement proceeding before the MSPB as well as the outcome of that action. For the reasons discussed below, the court holds that the enforcement action before the MSPB resulted in a final judgment on the merits of Mr. Cunningham's breach of contract claim.

The government, for its part, cites *Ford–Clifton v. Dep't of Veterans Affairs*, 661 F.3d 655 (Fed.Cir.2011), for the proposition that the dismissal of an appeal before the MSPB following the execution of a settlement agreement between the parties is a final judgment on the merits for purposes of res judicata. That case, however, is not directly applicable here. The court in *Ford–Clifton* held that the dismissal of an MSPB appeal as settled was a final judgment on the merits for purposes of res judicata when the plaintiff subsequently attempted to re-litigate the subject of that appeal in another forum. Similarly, the MSPB's dismissal of Mr. Cunningham's appeal as settled would bar any attempt to re-litigate his termination by OPM in another forum, but that is not the issue before the court in this case. Rather, Mr. Cunningham seeks to re-litigate the sole issue addressed in the enforcement proceeding before the MSPB—whether the government breached the settlement agreement—and not the underlying personnel dispute between him and OPM.

When the parties entered into the settlement agreement, Mr. Cunningham agreed to dismiss his appeal before the MSPB with prejudice, but the Board retained jurisdiction over the settlement agreement for enforcement purposes. Following the execution of the settlement agreement, the underlying appeal was dismissed, with prejudice, as settled. More than a year after the appeal had been dismissed, Mr. Cunningham filed a petition for enforcement of the settlement agreement. The administrative judge resolved the only issue properly before the MSPB in the enforcement proceeding when she determined that OPM had materially breached the settlement agreement. The full MSPB then adopted her recommendation to vacate its earlier order dismissing the underlying appeal as settled. Plaintiff was dissatisfied with the only remedy the MSPB was empowered to award for breach of the settlement agreement—the reinstatement of his appeal, which would have required him to return the payment made by OPM under the agreement—so he informed the MSPB that he did not want his appeal reinstated. For that reason, the administrative judge dismissed the enforcement petition, and the status of the underlying appeal remained as it had been since October 2005—dismissed with prejudice.[11]

## 3. This Suit Is Based on the Same Transactional Facts as the Enforcement Proceeding before the MSPB

Mr. Cunningham also argues that his suit in this court is a different "claim" or "cause of action" than his petition for enforcement before the MSPB because this suit is based on different operational facts than his earlier action before the MSPB. The court does not agree. In this court, plaintiff alleges that the government breached the settlement agree-

---

11. There were three "final decisions" rendered in connection with the enforcement proceedings before MSPB: (1) the decision of the administrative judge finding that OPM had materially breached the settlement agreement; (2) the decision of the full MSPB adopting the findings and recommendations of the administrative judge; and (3) the decision of the administrative judge dismissing the enforcement petition after Mr. Cunningham informed her that he did not wish to reinstate his appeal before MSPB. Regardless

of which one of those decisions is deemed to be the "final judgment on the merits" for purposes of res judicata, it is clear that the proceedings on Mr. Cunningham's petition to enforce the settlement agreement had reached a final conclusion before he filed his suit in this court. In addition, as the government notes, the decision of the full MSPB was appealable to the Federal Circuit, *see* Def.'s Mot.App. at A35–A36, which further reinforces the finality of the MSPB's decision on the petition for enforcement.

ment; before the MSPB, plaintiff alleged that the government breached the settlement agreement. In both cases, plaintiff advanced the exact same claim; the difference lies between the remedies available in the two forums.[12] For purposes of res judicata, however, the remedy sought by the plaintiff is irrelevant in determining whether two actions are based upon the same transactional facts.

■■■■ In general, the doctrine of res judicata precludes a suit in this court when it is "based on the same set of transactional facts as [an earlier suit in another forum]." *Ammex*, 334 F.3d at 1055. In determining whether two claims are based upon the same transactional facts, the court must view the issue "pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Phillips/May Corp. v. United States*, 524 F.3d 1264, 1271 (Fed.Cir.2008) (citation and internal quotations omitted). "Seeking to bring additional clarity to this standard, courts have defined 'transaction' in terms of a 'core of operative facts,' the 'same operative facts,' or the 'same nucleus of operative facts,' and 'based on the same, or nearly the same factual allegations.'" *Ammex*, 334 F.3d at 1056 (quoting *Herrmann v. Cencom Cable Assocs., Inc.*, 999 F.2d 223, 226 (7th Cir.1993)).

In the contracts context, however, that general rule "has been refined ... so that claims under a single contract generally must be brought together." *Phillips/May*, 524 F.3d at 1271 (citation omitted); *see also PCL Constr. Servs., Inc. v. United States*, 84 Fed.Cl. 408, 423 (2008) (explaining the "presumption that claims by the same party arising out of the same contract constitute the same claim for *res judicata* purposes"). The Federal Circuit has noted that "[t]he presumption that claims arising out of the same contract constitute the same claim for res judicata purposes may be overcome by showing that the claims are unrelated." *Phillips/May*, 524 F.3d at 1272. That is not the case here. Mr. Cunningham's suit in this court is based on the same alleged breach of the same contract due to the same conduct by the same party as his earlier action before the MSPB. In order to prevail on his breach of contract claim here, he would be required to establish the exact same facts that he demonstrated before the MSPB. There is no question that this suit is based upon the same transactional facts as Mr. Cunningham's earlier enforcement action before the MSPB.

### 4. Mr. Cunningham's Additional Arguments Are Unavailing

Mr. Cunningham raises two final arguments as to why res judicata does not apply in this case. First, plaintiff argues that the MSPB does not possess jurisdiction over claims seeking money damages, including the breach claim he now seeks to pursue in this court. Second, plaintiff argues that the parties to the settlement agreement had expressly agreed that plaintiff would be allowed to pursue separate claims for breach of that agreement before the MSPB and in this court, depending on the remedy sought in each case. Both of those arguments are without merit.

Mr. Cunningham first argues that res judicata does not bar his suit in this court because the MSPB was not a "court of competent jurisdiction" with respect to his claim for breach of contract. In that regard, Mr. Cunningham correctly notes that the MSPB cannot award money damages for breach of a settlement agreement, *see, e.g., Foreman v. Dep't of Army*, 241 F.3d 1349, 1352 (Fed.Cir. 2001); *Principe v. U.S. Postal Serv.*, 101 M.S.P.R. 626, 627 (2006), and asserts that his specific claim for "contract damages" lies within the exclusive jurisdiction of this court.[13] This argument, like Mr. Cunning-

---

**12.** In fact, the MSPB administrative judge who granted Mr. Cunningham's petition for enforcement noted that plaintiff had requested money damages in addition to injunctive relief. *See* Compl. Ex. 2 at 9 n.2.

**13.** The court notes that a decision rendered by an administrative agency, such as the MSPB, is entitled to preclusive effect on a subsequent action in this court, as long as the agency was acting in a judicial capacity. *See United States v.*

ham's other arguments, is based on his unconvincing attempt to characterize his cause of action as something other than a straightforward breach of contract claim. There is no dispute between the parties that Mr. Cunningham's petition for enforcement of the settlement agreement—which alleged a breach of that agreement—was within the jurisdiction of the MSPB. The fact that he requested one remedy there and another in this court does not change the essential nature of the claim.

Mr. Cunningham also argues that the doctrine of res judicata does not apply here because the parties to the settlement agreement agreed to bifurcation of his claims—*i.e.*, plaintiff contends that he and the government agreed plaintiff could pursue both a claim for enforcement of the settlement agreement before the MSPB and a separate claim for money damages in this court. In support of this assertion, plaintiff cites the Federal Circuit's decision in *Pactiv Corp. v. Dow Chemical Co.*, 449 F.3d 1227, 1231 (Fed. Cir.2006). However, that case is clear that any such bifurcation must be expressly stated in the agreement, and nothing in the settlement agreement between OPM and Mr. Cunningham expressly stated that plaintiff could pursue a claim for money damages after pursuing an enforcement action before the MSPB. Mr. Cunningham urges the court to infer the parties' intent based on the limited scope of the MSPB's remedial authority as described in the agreement. However, the Federal Circuit rejected exactly that type of bifurcation by implication in the case cited by plaintiff. *See id.* ("[W]e note that Pactiv has the standard backwards.... The question is not whether the [agreement] precluded Pactiv from future litigation; the question is whether the [agreement] expressly permitted Pactiv to participate in future litigation.").

In view of the foregoing, the court holds that while it does possess subject matter jurisdiction over Mr. Cunningham's suit, that suit must be dismissed as res judicata be-

*Utah Constr. & Mining Co.*, 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966) ("When an administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an

cause it has already been litigated to a final judgment in another forum. Accordingly, the government's motion to dismiss the suit for failure to state a claim, pursuant to RCFC 12(b)(6), must be granted.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that:

(1) Defendant's Motion to Dismiss, filed December 28, 2011, is **GRANTED**;

(2) The Clerk's Office is directed to **ENTER** final judgment in favor of defendant, **DISMISSING** the complaint with prejudice; and

(3) No costs.

adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose."). Mr. Cunningham does not contest this general principle.